216 So.2d 111 (1968)
Raymond Robert AVERY, Individually and for and on behalf of his minor son, Robert Wade Avery, Plaintiff-Appellee,
v.
Norvel SCOTT et al., Defendants-Appellants.
No. 11097.
Court of Appeal of Louisiana, Second Circuit.
October 31, 1968.
Rehearings Denied December 3, 1968.
Writs Refused January 20, 1969.
Lunn, Irion, Switzer, Johnson & Salley, Booth, Lockard, Jack, Pleasant & LeSage, Shreveport, for appellants.
Donald R. Miller, Shreveport, for appellee.
Before AYRES, BOLIN and PRICE, JJ.
PRICE, Judge.
In this tort action the father of a thirteen year old boy seeks to recover for personal injuries on behalf of his minor son and for the expenses he has incurred for medical treatment for his son resulting *112 from the collision of a truck with the boy's bicycle. Defendants are Norvel Scott, driver of the truck, his employer and owner of the truck, Naremore's Bossier Drug, Inc., and its liability insurer, Fireman's Insurance Company. It was stipulated that Norvel Scott was operating the truck within the scope of his employment at the time of the accident.
The case was tried before a jury in the district court and a verdict was returned in favor of plaintiff, individually, in the amount of $2,000.00, and on behalf of his minor son for $20,000.00. From this judgment the defendants have appealed.
The accident occurred on February 2, 1967, between 6:15 and 6:30 P.M. on Airline Drive, near its intersection with Murphy Street, in Bossier City, Louisiana. This is approximately one block from a shopping center known as the Weingarten Center, near Barksdale Boulevard. Plaintiff's son, Robert Avery, was returning from an errand to the Weingarten store on his bicycle and was traveling easterly along the south side of Airline Drive. Defendant, Norvel Scott, was traveling westerly on Airline Drive and was following a slowly moving car driven by Mr. Malcolm C. Wilson. After rounding a curve in the course of the road the defendant, Scott, attempted to pass the Wilson vehicle and pulled into the left lane of traffic. His vehicle struck the bicycle being ridden by young Avery, causing serious injury to the youth.
Airline Drive is a two-lane thoroughfare maintained by the Louisiana Department of Highways. It is undisputed that there is a double yellow line prohibiting passing in the entire section of Airline Drive where the accident occurred. It is also undisputed that the bicycle on which Robert Avery was riding was not equipped with a headlight.
Plaintiff contends that the accident happened solely through the negligence of Norvel Scott in passing in a prohibited zone and in failing to see Robert Avery in time to avoid the collision.
Defendants contend that, at the time of the accident, it was dark and that the sole cause of the accident was the negligence of Robert Avery in riding his bicycle after dark, without lights, in the traveled portion of the thoroughfare. Contributory negligence is also pleaded in the alternative against Robert Avery on the same allegations of negligence.
Defendants, in their assignment of errors on this appeal, complain that the trial court and jury erred in failing to find contributory negligence on the part of Robert Avery on the theory that his failure to have a light was in violation of LSA-R.S. 32:301; that this violation of a traffic statute was negligence per se, and, if it played any part whatever in the cause of the accident, no recovery can be had. Further error is assigned against the refusal of the trial judge to permit the introduction of photographs and moving pictures attempting to show the degree of darkness existing at the time of the accident.
The issues to be resolved in this matter are primarily issues of fact. There is no question as to the negligence of Norvel Scott. The evidence is abundant to show that he passed in a zone where passing was prohibited. He was a delivery man for a drug store and had traveled the area many times before and knew of the restriction on passing.
Of primary importance in determining whose negligence caused this accident is the position of the bicycle in the roadway and the degree of illumination in existence at the time of the accident.
Although it is defendants' contention that the bicycle was near the center of the road, the evidence indicates that the bicycle was not more than one and a half to two feet from the gravel shoulder of the road. This was established by police officers and other witnesses who found glass from a broken headlight of the truck in this area. It is *113 further corroborated by one of defendants' witnesses, Mr. Malcolm Wilson, the driver of the car being passed by Norvel Scott.
A considerable amount of evidence was offered by each side on the question of darkness. The testimony of the witnesses who were present at the scene of the accident within minutes is conflicting on this issue. The accident apparently happened between 6:15 and 6:30 P.M. on February 2, 1967. The police officer testified the call was received at 6:25 P.M. Defendant attempted to exhibit a motion picture film to the jury that was made by an expert on the same date as the accident but one year later, showing the degree of darkness that existed at intervals about the time of this accident. Plaintiff also attempted to introduce still photographs depicting the degree of illumination existing at the scene, which were made by an expert at a time subsequent to, but comparable to the date of the accident. The trial judge excluded each of these offerings but allowed an offer of proof to be made to complete the record for an appeal. His principal reason for not allowing this evidence was the susceptibility of error or manipulation in the photographic process to either increase or decrease the darkness of the photo negative and thus produce a misleading picture. After viewing the film filed in the offer of proof, we do not believe that the trial judge abused his discretion in denying the exhibition of these films to the jury.
In addition to the witnesses on the scene of the accident who testified to varying degrees of darkness, the plaintiff produced the testimony of a Professor of Astronomy at Centenary College, Mr. John O. Williams. He testified that the sun set at 5:49 P.M. on February 2, 1967. He further described the period of approximately thirty minutes after sunset as an astronomical twilight and defined darkness as beginning at the end of this period.
The plaintiff contends that even though it be conceded that darkness had descended, that the area involved is well lighted by mercury type street lights and the additional lights of the Weingarten parking lot situated just to the south of the scene of the accident.
Several of the witnesses testified that they had no difficulty seeing the Avery youth lying on the shoulder of the road without the assistance of car lights at a distance of more than 100 feet. A Mr. Sproles and a Mrs. Hoffman, who resided along Airline Drive near the scene of the accident, testified that the street is well lighted from street lights and further augmented by the mercury floodlights in the Weingarten parking lot.
In finding a verdict for the plaintiff, the jury had to believe that the negligence of Norvel Scott was the proximate cause of the accident. We believe there is sufficient evidence to justify this conclusion.
The double yellow stripe indicates that passing is prohibited from either direction. This designation is only made after the Department of Highways has determined that there are certain hazards existing in the area that would make passing unsafe.
Had Norvel Scott not violated the no passing zone regulation, most probably this accident would not have happened.
On the other hand, even if Robert Avery's bicycle had a functioning light at the time, there is no reason to believe it would have prevented the accident. Norvel Scott began his passing maneuver just after rounding a curve and almost immediately after pulling into the left hand lane he saw the Avery boy on his bicycle. Had a light been burning on the bicycle it is doubtful that it would have been seen any sooner by Norvel Scott.
The defendants rely on the case of Lawrence v. Core, La.App., 132 So.2d 82 (3d Cir., 1961), to establish contributory negligence on behalf of Robert Avery. Although the facts of that case are somewhat similar *114 to this case in that a bicycle was being ridden on a highway, well after dark and without lights, and was struck by a motorist passing another vehicle, there are two distinguishing features that make it inapposite to this case. First, the area involved had no artificial illumination. Secondly, and most important, the motorist in that case had the legal right to pass as there was no prohibited zone.
For these reasons we can find no manifest error in the verdict of the jury in their finding the sole and proximate cause of the accident was the negligence of the defendant, Norvel Scott.
The jury awarded the amount of $20,000.00 for the personal injuries to young Robert Avery. He suffered rather severe injuries as a result of the collision. He lost two front teeth that will require that he wear a bridge containing false teeth for the remainder of his life. His left leg was broken with a fracture of the left femur. The ulna and radius bones of the left forearm were fractured. He further suffered a fracture of the illium extending into the hip joint. In addition he had multiple contusions and bruises. He was hospitalized for a period of 64 days, during which time he underwent treatment of a painful nature. He wore a Spica body cast for several months after leaving the hospital and walked with the aid of crutches. Recovery of the use and strength of his leg was a slow and gradual process, requiring therapy treatments after the cast was removed.
The orthopedic specialist who treated Robert Avery testified that he suffered a permanent shortening of the left leg of approximately one-fourth to one-half of an inch. Although he substantially recovered after approximately one year, there is testimony to establish that his physical endurance and athletic capabilities are not the same as before the accident.
The evidence further reflected that Robert missed several months of schooling and that when he returned to school he wore the Spica cast which prevented him from sitting. His return to a full school program was very gradual and under very trying circumstances.
Dr. Ratley, a dental expert, testified that the future dental costs would be approximately $2,000.00.
We do not find that the jury abused its discretion in awarding $20,000.00 for the personal injuries to Robert Avery. Neither do we find that this amount is inadequate as contended by plaintiff in his answer to the appeal.
The jury awarded the sum of $2,000.00 to plaintiff, Raymond Robert Avery, for expenses he had personally incurred for his son as a result of this accident. The record is void of any evidence proving any of the expenses claimed by this plaintiff in his original petition. Hospital treatment was administered by the Barksdale Air Force Base Hospital and any claim that the United States Government has against the tort feasor under the Medical Care Recovery Act, 42 U.S.C.A., Secs. 2651-2653, has been held to be an independent right of the United States. United States of America v. Fort Benning Rifle and Pistol Club, 387 F.2d 884 (5th Cir., 1967). We, therefore, are of the opinion that there is no evidence to sustain this award in favor of plaintiff.
It is, therefore, ordered that the judgment appealed from be amended to reject the claim of plaintiff for the amount sued for individually in this action, and in all other respects the judgment appealed from is affirmed at appellants' costs.