302 So.2d 40 (1974)
Jessie Burcham MESSEX et al., Plaintiff-Appellant,
v.
LOUISIANA DEPARTMENT OF HIGHWAYS et al., Defendants-Appellees.
No. 4698.
Court of Appeal of Louisiana, Third Circuit.
October 16, 1974.
*41 John G. Poteet, Jr. and Sidney P. Landry, Jr., Lafayette, for plaintiff-appellant.
Davidson, Meaux, Onebane & Donohoe, by John G. Torian, II, Lafayette, Caffery, Duhe & Davis, by Jerry A. Oubre, New Iberia, Jack C. Fruge, Jr., of Domengeaux & Wright, Lafayette, Pugh & Boudreaux, by Nicholls Pugh, Jr., Ronald E. Dauterive, Lafayette, for defendants-appellees.
Before CULPEPPER, MILLER, and WATSON, JJ.
MILLER, Judge.
Plaintiff, Mrs. Jessie Burcham Messex, appeals from the judgment dismissing her claims for damages as administrator of her deceased's son's estate. He was injured when he drove into an intersection and was struck by a vehicle traveling the favored road. Defendants are Joseph Ardoin and his insurer (for Ardoin's alleged negligent operation of his motor vehicle), the Louisiana Department of Highways (for it's alleged breach of duty to construct, improve, repair, and regulate the use of state highways), and the Donlon family and their insurer (for Donlon's failure to remove obstructions at the corner of the intersection). We affirm.
On November 12, 1971, at about 11:30 p. m. plaintiff's son, William Romero, was *42 driving a 1965 Volkswagon west on Mouton Switch Road in Lafayette. At the same time defendant Ardoin was driving his stationwagon north on Moss Street Extension which had the right of way at the intersection of the two roads. Stop signs posted on the Mouton Switch Road required Romero to stop before entering the intersection. Both roads are two-lane, two-way, hard surfaced roads.
Romero died prior to trial, but from causes unrelated to the accident. He testified by deposition that he stopped at the blind intersection, saw nothing coming, and proceeded into the intersection to turn left onto Moss Street Extension. His Volkswagon was struck broadside by the oncoming Ardoin stationwagon which was in its proper lane. Impact occurred after the stationwagon laid down 45 feet of skidmarks.
Plaintiff contends that Ardoin was negligent in that he was speeding, driving in a fatigued condition, driving under the influence of alcohol, and that he failed to slow at the intersection which he knew to be a hazardous one.
Plaintiff contends that the Louisiana Department of Highways was negligent in that it knew of vision impairments at the intersection and failed to correct same. Additionally, plaintiff urges that the Department knew of the "slope" or "incline" of the Moss Street Extension, and failed to correct or properly sign the hazardous condition.
Plaintiff contends that the Donlons, the neighboring property owners, are liable because they permitted the vision impairment to exist and this condition was a legal cause of the accident.
The trial judge decided the case shortly after its submission. There is evidence in the record to support a finding that all defendants were free from negligence which was a legal cause of the accident, but we pretermit consideration of their alleged negligence. We base this decision on the negligence of William Romero in entering the intersection when the Ardoin vehicle had the right of way.
Plaintiff contends that Romero could not see the approaching Ardoin vehicle due to a steep incline in Moss Street Extension as it approaches the intersection and because of a fence and trees just southeast of the intersection, which allegedly blocked his vision.
As noted, westbound traffic on Mouton Switch Road is required to stop for the intersection. The stop sign is sixteen feet from the east edge of Moss Street. The incline in Moss Street was not established to be a factor in the cause of this accident.
Romero testified that he stopped at the stop sign (sixteen feet from the intersection), looked both ways, saw nothing, and proceeded into the intersection. He never stopped after his initial stop, and remembers nothing more about the collision.
A driver stopped at a stop sign who has encountered a "blind corner", bears a greater degree of care than when he has an unobstructed view. A driver who stops at a stop sign has discharged only part of his duty. He must not proceed until he has made certain the way is clear. At blind intersections this rule is especially applicable, and greater care is required on the part of the driver on the inferior road. Lucas v. Broussard, 197 So.2d 696 (La.App. 4 Cir. 1967); Adams v. Kimble, 208 So.2d 14 (La.App. 1 Cir. 1968); Danos v. Forsythe, 205 So.2d 821 (La.App. 4 Cir. 1968).
When a driver encounters a "blind corner" he must drive to a point where he can gain a better view before proceeding into the intersection. Emmco Insurance Company v. California Company, 101 So.2d 628 (La.App.Orls.1958); Drez v. Grand, 48 So.2d 726 (La.App. Orls.1950).
The preponderence of plaintiff's witnesses' testimony is that had Romero proceeded cautiously from his stopped position (sixteen *43 feet before he reached the intersection), he would have seen the approaching Ardoin vehicle when it was more than 235 feet from the intersection. Defendant's impressive evidence extended this distance to more than 400 feet.
Defendants offered photographs to show the driver's visibility at this intersection. The photographs were admitted subject to plaintiff's timely objection that they do not depict the scene as it existed at the time of the accident and that conditions changed before the photographs were made.
The photographs were properly admitted in evidence although they were taken during daylight hours rather than during darkness when the accident occurred. The expert photographer took pictures from relevant positions. He sat behind the wheel of a Volkswagon and photographed a stationwagon (similar to Ardoin's) as it approached the intersection. When the photographer could see the headlamps of the stationwagon he sounded the VW horn and the stationwagon was stopped. The photograph of the stationwagon was taken and a land surveyor measured the distance from the intersection to the stationwagon. The photographer then walked to the stationwagon and took a picture looking toward the intersection and the VW. This procedure was followed three times. First while the VW was stopped at the stop sign located sixteen feet from the east edge of Moss Street. Then when the VW was at a point 10.5 feet from the east edge, and finally when the VW was at a point close to the east edge of Moss Street. The surveyor's measurements showed that the stationwagon was visible when it was 89 feet from this intersection under the first described conditions. Under the second and third conditions, the stationwagon was visible when it was 333 feet and 437 feet respectively, from the intersection.
The fact that there are differences or changes in conditions does not necessarily exclude a photograph where the changes or differences are explained, so that the photograph, as explained, gives a correct understanding of the condition existing at the time to which the controversy relates. 32 C.J.S. Evidence § 715 at page 1012.
The photographs were offered for the limited purpose of showing visibility to the left of the intersection. That the photographs were not taken at night was explained and accounted for in that pictures were not taken until the headlamps came into view. Absent obstructions (and these were taken into account) the headlamps are visible at night for at least the same distances they are visible during daylight hours.
The contention that the fence and trees at the southeast corner had changed was accounted for by placing a tripod at the point where the northwesternmost obstruction stood at the time of the accident. The photographs were not taken until the stationwagon's headlamps were visible beyond the tripod. It was established that the fence removal was the only change made at the intersection since the accident, and specifically that no trees were moved when the fence was set back.
We distinguish Avery v. Scott, 216 So.2d 111 (La.App. 2 Cir. 1968). Motion picture film was there sought to be introduced to show the degree of darkness at the time of the accident. The photographs here were introduced to show the obstruction to view to the left of the intersection, and did not purport to duplicate the conditions at the time of the accident.
It was established that if Romero had looked for approaching traffic before he moved into the intersection, he would have seen the approaching Ardoin vehicle. Romero breached his legal duty by entering the intersection when the Ardoin vehicle had the right of way. This breach was the legal cause of the accident.
Plaintiff next contends that conceding negligence by her son, she is entitled to recover *44 under the doctrine of last clear chance. This argument is not urged as to defendants the Department of Highways and the Donlon family.
The three criteria for application of the doctrine of last clear chance are:
1. that plaintiff was in a position of peril of which he was unaware or from which he was unable to extricate himself;
2. that defendant actually discovered or should have discovered plaintiff's peril; and
3. that at the time defendant actually discovered plaintiff's peril, defendant should have had a reasonable opportunity to avoid the accident.
This doctrine is not applied unless it is established that the motorist could have avoided injuring plaintiff by using ordinary and reasonable caution. The question to be resolved does not depend upon the determination that under the exercise of extraordinary caution and resort to unusual maneuvers the injury could have been avoided. The motorist must have been afforded only a reasonable opportunity to avoid the accident and, to substantiate that conclusion, the evidence must be sufficient to convince the court that by the exercise of these reasonable precautions the injury could have been avoided. Moore v. American Insurance Company of Newark, New Jersey, 150 So.2d 346 (La.App. 1 Cir. 1963).
Plaintiff offered a computer study prepared by her expert in the field of mathematics and computer science. This study was performed considering Ardoin's stated speed of 45 to 50 mph, his skid distance of 45 feet and taking a variable range of figures for reaction times, friction ratios, and speeds at impact. Plaintiff's expert worked with the reaction times taken from a chart in 14 Tul.L.R. 503. Use of such charts does not of itself prevent introduction of the computer study. There is adequate evidence to support admission of the computer study into evidence. Moliere v. Liberty Mutual Insurance Company, 239 So.2d 477 (La.App. 4 Cir. 1970).
The computer study does not support plaintiff's claim under the last clear chance doctrine. The study concluded that a northbound vehicle traveling at the speed limit could not have avoided the accident. Ardoin was traveling at or slightly over the 45 mph speed limit. When Ardoin first saw light from Romero's vehicle (he could not see the headlights), he concluded that the vehicle was stopping for the stop sign. When Romero's VW first came into view, Ardoin applied his brakes and had no opportunity to avoid striking Romero's VW.
We conclude as did the trial judge that the doctrine of last clear chance is not applicable because Ardoin did not have "a reasonable opportunity to avoid the accident."
Finally, plaintiff contends that the $50 expert fee awarded by the trial court should be increased. We agree that the fee is not commensurate with the training and time expended by plaintiff's expert, but since all costs are taxed to plaintiff, we consider this issue to be moot.
The trial court judgment is affirmed at plaintiff's costs.
Affirmed.