413 So.2d 260 (1982)
BICO ENTERPRISES, INC., Plaintiff-Appellee,
v.
Charles CANTRELL, d/b/a 4-C Distributors, Defendant-Appellant.
No. 8612.
Court of Appeal of Louisiana, Third Circuit.
April 14, 1982.
*261 Robert L. Salim, Natchitoches, for defendant-appellant.
Self & Burkett, Don Burkett, Many, for plaintiff-appellee.
Before GUIDRY, CUTRER and STOKER, JJ.
GUIDRY, Judge.
This is a suit for breach of contract. Plaintiff, Bico Enterprises, Inc. (hereafter Bico) instituted the present action against defendant, Charles Cantrell, d/b/a 4-C Distributors, to recover the contract price and damages allegedly sustained as a result of defendant's failure to perform a contract for the construction and equipping of a car wash located in Many, Louisiana. Subsequent to the filing of suit, James Cook joined Bico as plaintiff. After filing his initial answer to plaintiffs' petition, Cantrell filed an amending answer which included a reconventional demand. Cantrell's reconventional demand asserts that plaintiffs (defendants-in-reconvention) Bico and James Cook along with Thelma Cook, president of Bico, are indebted to defendant in the sum of $6,000.00 representing additional costs incurred by Cantrell in building the disputed structure and allegedly incurred after the confection of the original agreement. *262 After trial, the district court concluded that the car wash constructed by the defendant was so defective as to be unfit for its intended use and purpose. Plaintiffs were awarded judgment in the sum of $8,150.00 representing the amount paid by plaintiffs to the defendant less an amount paid by Cantrell to a concrete subcontractor. Defendant appeals from that judgment. Plaintiffs have neither answered nor appealed from the decision of the trial court.
The facts, as gleaned from the record, may be summarized as follows: In December of 1978, plaintiffs and the defendant entered into a verbal agreement in which the parties agreed that defendant would build a car wash for Bico Enterprises, Inc. The only written evidence of the aforesaid agreement is an invoice form signed by Charles Cantrell which states:
"Will build car wash (slab to bld) for $12,200.00 not counting concrete. ($3,000.00 advanced 4-2-79)."
According to the record, defendant agreed to construct the car wash on property owned by Bico. In addition, the defendant agreed to sell and install the equipment necessary for the car wash operation. In return, plaintiffs were to pay to defendant the sum of $12,200.00 for the construction of the building as well as pay for all needed concrete materials and the equipment installed. Thelma Cook, president of Bico, testified that plaintiffs contracted only for the construction of a four-bay cinder block car wash suitable for the purpose intended with the exact manner of construction and the particular building specifications being left to defendant's discretion. Construction of the proposed car wash began sometime in either February or March of 1979. Defendant ceased working on the project in July of the same year. Shortly thereafter, plaintiffs' attorney made amicable demand upon the defendant for specific performance of the contract. The defendant refused to return to the job site and complete the project. The record contains conflicting testimony regarding the reason for the work stoppage. Mrs. Cook testified that the defendant refused to continue construction because he needed money as a result of underbidding the project. Cantrell, however, stated at trial that he discontinued construction because plaintiffs refused to pay one of the subcontractors for services rendered in connection with the project.
Evidence received at trial sufficiently established that plaintiffs paid to defendant the sum of $11,900.00 as partial payment of the total contract price for the construction of the car wash. Mrs. Cook testified that prior to the agreement between the parties, plaintiffs initially agreed to purchase the equipment necessary for the business from the defendant at a total price of $12,600.00. Documentary evidence introduced at trial reveals that plaintiffs made an initial down payment on the equipment of $1,000.00 with a subsequent payment in February, 1979 in the sum of $11,104.00. Mrs. Cook stated that of the aforesaid equipment, certain overhead lights, a towel vendor, and a white wall vendor were neither installed nor delivered.
Mrs. Cook testified that there were numerous problems with the project. In this regard, she stated that the defendant failed to complete the car wash by the agreed upon date of June 21, 1979. Problems with the building itself included cracked walls; a sagging roof; one wall totally destroyed as a result of high winds; and, portions of the roof were damaged as a result of the failure of the defendant to properly adhere the roofing material to the structure. Mrs. Cook testified that it was Cantrell who recommended that the car wash be constructed of cinder blocks. In addition, Cantrell was responsible for the manner in which the structure was constructed including the height of the walls and the method of reinforcing the same.
Plaintiffs' expert witness, Valmore Byles, a licensed general contractor with over 20 years experience in the fields of general, commercial, and industrial construction, testified that after inspecting the car wash structure, he concluded that the method and manner of construction of the facility was totally unacceptable. In this regard, *263 Byles stated that the cinder block walls were not properly reinforced and the structure was unsafe. Byles also testified that the roof was not constructed properly. Specifically, Byles stated that there was no mastic (adhesive) to adhere the roofing material to the structure. In addition, he indicated that the roof was constructed of 2 X 6's which spanned a distance of 16-17 feet. Byles stated that such a span was simply too far to be sturdy and stable. As a result of such poor and substandard construction practices, the roof of the structure sags. Other problems with the structure, as noted by Byles in his inspection of the premises, include clogged drains; the openings in the grates protecting the drainage holes being too large, thus, presenting a safety hazard; and, the roof joists not being properly fastened to the concrete block walls. Byles opined that there was no way to salvage or repair the car wash building, rather, it would have to be torn down and the project redone. Byles testified that the concrete foundation was the only salvageable item.
Contrary to the testimony of Cook and Byles, the defendant testified that the walls of the structure were properly constructed. He stated that he reinforced the walls of the structure with metal rebars to a height of three to four feet. Cantrell stated that the purpose of such reinforcement was not to strengthen the walls against horizontal forces, such as high winds, but rather, to minimize the cost of repairing the walls in case such was needed in the future. Cantrell also stated that he recommended to plaintiffs that bricks instead of cinder blocks be used in the construction of the car wash, however, plaintiffs chose to use cinder blocks. Finally, defendant asserts that his original estimate of the cost of the car wash did not include the various and sundry changes insisted upon by the plaintiffs after construction was begun. Defendant testified that he agreed to make the changes proposed by the plaintiffs only after they agreed to pay all additional costs incurred as a result of such changes. Defendant admitted that plaintiffs made amicable demand upon him to finish the project, but he refused. Defendant also admitted that plaintiffs owed nothing more on the equipment.
Defendant presented several witnesses, most of whom worked as subcontractors on the disputed project. Amos Richardson, a brick mason, who laid the cinder block walls testified that the project employed light weight cinder blocks and that the walls of the car wash were reinforced by metal rebar for every three to four feet in height. Richardson indicated that in his experience such reinforcement was sufficient in cases involving regular eight foot walls. However, Richardson admitted that since the walls were 10 to 12 feet in height, the better practice would have been to reinforce the walls with pilasters. James Yates, who poured the slab for the disputed structure, stated that the concrete foundation was laid properly. Harold Jones, who put the roof on the building, indicated that Cantrell informed him that he would complete some additional work on the roof to prevent updrafts from getting underneath the roofing material and blowing such material off. The record reflects that such additional work was never completed.
In addition to the above, plaintiffs introduced into evidence numerous photographs of the car wash. These photographs, admitted over defendant's objection, reflect substandard workmanship in the construction of the facility.
The issues on appeal are:
(1) Did the trial court clearly err in admitting into evidence certain photographs taken of the car wash premises in dispute?
(2) Did the trial court clearly err in qualifying Valmore Byles as an expert witness?
(3) Did the trial court err in denying defendant's motion to inspect the premises?
(4) Did the trial court err in concluding that the defendant violated the implied warranty of good workmanship performance as provided in LSA-C.C. Article 2769?
Defendant first contends that the trial court erred in admitting into evidence certain *264 photographs taken of the car wash premises. In this regard, Cantrell argues that the photographs were received in evidence without requiring a proper foundation. In support of his contention, defendant argues that the aforesaid photographs were taken after one year had elapsed from the time in which defendant discontinued construction of the facility, thus, they do not accurately depict the condition of the car wash in July of 1979. Defendant further asserts that the photographs are inadmissible because the photographer who took the objectionable photographs was not present at the trial and available for cross-examination. At the outset, we observe that prior to the photographs being received into evidence, it was established that the photographs were taken the day before trial and represented the condition of the car wash at that time. In addition, plaintiffs' witness, Thelma Cook, was questioned as to the differences in the appearance of the building at the time of the photographs as compared to the time in which construction was discontinued, and presumably, the trial judge took notice of such differences.
It is well settled that in order for photographs to be admissible, it need only be shown that a photograph depicts what it purports to depict. Derouen v. Department of Transportation and Development, Office of Highways, 392 So.2d 765 (La.App. 3rd Cir. 1980) and cases cited therein. Further, the fact that there are differences or changes in the conditions does not necessarily exclude a photograph where the changes and differences are explained. See Messex v. Louisiana Department of Highways, 302 So.2d 40 (La.App. 3rd Cir. 1974). After reviewing the record, we conclude that a proper foundation for the admissibility of the photographs was laid by plaintiffs, thus, the trial court did not err in admitting the same in evidence.
Defendant next contends that the trial court erred in qualifying Valmore Byles as an expert witness in the fields of general, commercial, and industrial construction. Defendant argues that Byles does not possess the required experience and education to testify as an expert in the field of construction.
The record reflects that at the time of trial Byles had had twenty years experience in the fields of general, commercial, and industrial construction. Byles testified that he had constructed between 100-200 buildings in Sabine Parish including several composed primarily of cinder blocks. The record reflects that Byles is licensed by the State of Louisiana as a general contractor. A trial judge must be allowed much discretion in determining a witness' qualifications and competence to testify as an expert, and the reviewing court will not disturb a trial judge's ruling unless error is clear. See Sledge v. Aluminum Specialties Mtfg., Inc., 351 So.2d 835 (La.App. 1st Cir. 1977); Maxwell v. State, Department of Transportation and Development, 391 So.2d 1230 (La. App. 1st Cir. 1980), writ denied, 394 So.2d 281 (La.1980). We conclude that the trial judge was clearly justified in accepting Byles as an expert witness in the fields of general, commercial, and industrial construction.
Defendant next contends that the trial court erred in denying his motion to inspect the premises. Defendant asserts that had the trial judge visited the car wash premises, he would have seen, first hand, that the photographs introduced by plaintiffs were distorted and the premises were, in fact, undamaged. It is well settled that a trial judge possesses the right to take into consideration his personal evaluation and observation of the disputed area, not for the purpose of supplying new evidence, but for the purpose of determining, when the evidence adduced by the litigants with respect thereto is in hopeless conflict, which version thereof is worthy of belief. See Maturin v. Dronet, 288 So.2d 690 (La.App. 3rd Cir. 1974); Sledge v. Aluminum Specialities, Inc., supra. Generally, visits by the trial court to sites which are the subject of the litigation are conducted only in instances where the testimony is so confusing and conflicting that such excursions aid the trial court in visualizing the disputed occurrence. Presumably, the trial court in the present *265 case did not feel it necessary to conduct such a time-consuming activity because he was satisfied that the facts necessary to make a fair and impartial decision were contained in the record before him. We discern no error in this conclusion.
Defendant's final contention is that the trial court manifestly erred in concluding that he violated the implied warranty of good workmanship performance as provided in LSA-C.C. Article 2769 by constructing the car wash in such a manner as to be unfit for the purpose intended. We disagree.
It is implied in every building contract that the work of the contractor or builder will be in a good, workmanlike manner, free from defect, either in material or workmanship. LSA-C.C. Article 2769; Troy v. Bretz, 399 So.2d 667 (La.App. 1st Cir. 1981); Tiger Well Service v. Kimball Production Co., 343 So.2d 1153 (La.App. 3rd Cir. 1977). Contractors are liable under the aforesaid jurisprudential rule only when the plaintiff can prove that the contract was not performed in a workmanlike manner. Such proof must necessarily include some showing of want of skill, efficiency or knowledge, or some lack of ordinary care in the performance of the work or in the selection of suitable materials and equipment. Tiger Well Service v. Kimball Production Co., supra.
The record contains substantial testimony and evidence supporting the factual finding of the trial court. Valmore Byles, an expert witness in the fields of general, commercial, and industrial construction, stated unequivocally that the car wash structure was poorly constructed and unsafe. Byles indicated that the only salvageable item in the entire structure was the concrete foundation. It is undisputed that one of the car wash walls collapsed under the force of a strong wind. Defendant's own witness, Amos Richardson, admitted that walls of the height of those in dispute required greater reinforcement in order to be secure, stable and safe. The photographs introduced into evidence, although taken a year after construction was discontinued, clearly reflect the poor workmanship of defendant in constructing the car wash. Thus, we discern no clear error in the factual conclusions of the trial court.
For the above and foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed to the defendant, Charles Cantrell, d/b/a 4-C Distributors.
AFFIRMED.