552 So.2d 1023 (1989)
Mickey ALLEMAND
v.
ZIP'S TRUCKING CO., INC., John E. Proctor, Caro Produce & Institutional Foods, Inc., the Forum Insurance Company, the Terrebonne Parish Rescue Squad.
No. CA 88 1631.
Court of Appeal of Louisiana, First Circuit.
November 14, 1989.
Rehearing Denied December 13, 1989.
*1025 Grady C. Weeks, Houma, for plaintiff and appellee Mickey Allemand.
Kenneth V. Faherty, New Orleans, for defendants and appellants Forum Ins. Co.
James S. Thompson, New Orleans, for defendant Caro Produce, Inc.
Christopher V. Lawler, Metairie, for third party defendant Allstate Ins. Co.
F. Lee Butler and Donald Massey, New Orleans, for defendant-appellant Zip's Trucking Co. and John Proctor.
Before CARTER, SAVOIE and ALFORD, JJ.
ALFORD, Judge.
This case arose following a vehicular collision in Lafourche Parish. Plaintiff, Mickey Allemand, his wife, Cynthia Allemand, and a friend, Roy Kramer, had been to several bars during the course of the evening of September 22, 1983 and early morning of September 23, 1983 and were returning home at approximately 4:15 a.m.; Cynthia was driving. After turning onto La. 316, Mr. Kramer asked to be let out of the automobile at a point two to three miles from his home; he testified at trial that he wanted to walk the rest of the way home because Mr. and Mrs. Allemand were arguing. After Mr. Kramer exited the vehicle, Mrs. Allemand continued driving in a northerly direction on La. 316, until her car collided with an eighteen-wheel truck and trailer which was blocking both lanes of La. Hwy. 316. The eighteen-wheeler was driven by defendant, John E. Proctor, and owned by defendant, Zip's Trucking Co., Inc. (hereinafter referred to as "Zip's").
Mrs. Allemand died instantly. Mr. Allemand was extracted from the vehicle, which had became wedged beneath the trailer of the eighteen-wheeler, after approximately half an hour. Mr. Allemand was then taken to Terrebonne General Medical Center where he was treated for a severe closed head injury with possible cridriform platefracture and a right temple lobe hematoma; additionally, plaintiff suffered facial trauma and a corneal abrasion of the right eye.
Prior to the accident, Mr. Proctor had arrived at the La. Hwy. 316 plant entrance of defendant, Caro Produce & Institutional Foods, Inc. (hereinafter referred to as "Caro") to deliver a load of lettuce, shortly before it opened. Mr. Proctor parked his rig on the opposite side of the road from *1026 Caro to await its opening. Weston Winn, a Caro employee, opened the plant at approximately 4:00 a.m.; he then went across the street and asked Mr. Proctor to back his rig up to the shipping dock[1] so the lettuce could be unloaded.
Mr. Proctor backed the eighteen-wheeler up to the shipping dock but realized the back doors of the trailer were not open. Mr. Proctor then pulled the eighteen-wheeler away from the dock and across La. Hwy. 316, where it remained for approximately three to five minutes before being struck by the vehicle in which plaintiff was a passenger.
Following trial on the merits, the trial judge rendered judgment in favor of plaintiff and against John E. Proctor, Zip's, and Zip's insurer, Forum Insurance Co. in the following amounts:

Past Medical Expenses ......... $ 47,723.32
Lost wages from date of
accident to date of trial ..... $ 70,613.00
Future lost wages from
date of trial ................. $ 486,325.00
Damages for wrongful
death of his wife ............. $ 200,000.00
Future supervisory care ....... $ 813,000.00
General Damages for pain,
suffering, permanent physical
and mental disability,
exclusive of damages for
the death of his wife ........ $2,200,000.00
 _____________
 TOTAL .................. $3,817,661.32

John E. Proctor and Zip's seek on appeal[2] the reversal of the trial court finding of no fault on the part of Cynthia Allemand, and Caro.

FAULT OF CYNTHIA ALLEMAND
John Proctor and Zip's argue on appeal that the trial court erred in failing to take into account proof that Cynthia Allemand was intoxicated at the time of the accident. Further, appellants argue that improper evidentiary rulings on photographic evidence and expert testimony resulted in an improper conclusion on the issue of causation.
The trial court found that defendants did not bear their burden of proving that Mrs. Allemand was intoxicated. During the trial, the results of a blood alcohol test on a sample of Mrs. Allemand's blood taken following her death, were excluded by the trial judge for failure of defendants to provide the report to plaintiff prior to trial pursuant to their continuing duty to supplement responses to a discovery request concerning trial exhibits.
Plaintiff maintains on appeal the correctness of the trial court's ruling excluding the blood test results for failure to comply with discovery requirements and additionally argues that the evidence was properly excluded for the failure of defendants to show the complete chain of possession of the blood sample and because the method used by the coroner in withdrawing the blood sample from the body of Mrs. Allemand, was defective.
The requirements for the introduction of a blood test analysis are very stringent; the party seeking to introduce such evidence must first lay a proper foundation for its admission. Pearce v. Gunter, 238 So.2d 534 (La.App. 3d Cir.), application not considered, 256 La. 888, 239 So.2d 543 (La.1970). This predicate must connect the specimen with its source, show that it was properly taken by an authorized person, properly labeled and preserved, properly transported for analysis and properly tested. Pearce v. Gunter, 238 So.2d at 537.
The evidence adduced at trial shows that on September 23, 1983, Dr. Philip Robichaux, Lafourche Parish coroner, withdrew the blood sample from the body of *1027 Cynthia Allemand at the funeral home where she was taken following the accident, and sealed it in a blood alcohol test kit. Louisiana State Trooper W.F. McDowell testified that he picked the sample up from the funeral home on September 23, 1983, however, Trooper McDowell could not recall who had given him the test kit at the funeral home. Trooper McDowell took the sealed kit to Troop C and placed it in the possession of Trooper Galliano to be forwarded for testing. Trooper Galliano did not testify at trial. Grace Johanson was the forensic scientist at the Louisiana State Police Crime Lab in Baton Rouge, who performed the alcohol test on the blood sample. Ms. Johanson testified that the blood sample had been mailed to the Crime Lab where it was received on October 5, 1983 by Libby Martin, who numbered the sample and gave it to Ms. Johanson. Libby Martin did not testify at trial. Ms. Johanson testified regarding the testing procedure she used and stated that she obtained a result which showed a blood alcohol level of 0.23 percent alcohol by weight.
Under these circumstances, we find that a proper foundation was not laid for the admission of the test results. The lapse in Trooper McDowell's memory together with the absence of testimony from Trooper Galliano and Libby Martin left three time periods during which the whereabouts and security of the blood sample were unaccounted for. We find it particularly disturbing that an unexplained lapse of thirteen days occurred between the time Troop C received the blood sample and the time the Crime Lab obtained its possession. Unless proof is made of the proper preservation of the blood sample between the time it is taken and its testing, the subsequent results are unreliable evidence and properly excluded. See Richardson v. Continental Ins. Co., 468 So.2d 675 (La.App. 3d Cir.), writ denied, 474 So.2d 1304 (La.1985); Holmes v. Christopher, 435 So.2d 1022 (La. App. 4th Cir.), writs denied, 440 So.2d 723, 724, 765 (La.1983); Lapoint v. Breaux, 395 So.2d 1377 (La.App. 1st Cir.), writ denied, 399 So.2d 611 (La.1981). Thus, the blood alcohol test results were properly excluded by the trial court. Having disposed of the issue on this basis, we find it unnecessary to address plaintiff's other contentions in support of this particular evidentiary ruling.
The only other testimony introduced at trial concerning Mrs. Allemand's alleged intoxication was that of Roy Kramer, Mr. and Mrs. Allemand's companion on the evening in question. Mr. Kramer testified that Cynthia and Mickey Allemand picked him up at his mother's house at approximately 6:30 p.m. and that they patronized three bars that evening, leaving the last one to return home at approximately 3:30 a.m. Mr. Kramer testified that during that nine hour time period, he only saw Cynthia Allemand drink between two to four beers. Mr. Kramer testified that Mrs. Allemand gave no indication that she was intoxicated. Consequently, we are unable to say that the trial court erred in finding that Cynthia Allemand was not intoxicated.
Appellant also argues on appeal that Cynthia Allemand should have been assessed some fault in the accident, claiming that she should have been able to see the obstruction across the highway in time to bring the vehicle to a safe stop. Several expert witnesses testified at trial on this issue: William C. Smith, a civil engineer; Francis H. Wyble, also a civil engineer; Colonel Joseph André, an accident reconstructionist; Olin K. Dart, Ph.D., a traffic engineer specializing in accident reconstruction; and, Leonard C. Adams, Ph.D., an electrical engineer. The trial court summarized and evaluated the testimony of these witnesses as follows:
Mrs. Allemand was driving her vehicle out of a curve just south of the accident site and the tangent point of the curve was calculated to be 96.44 feet from the place on the highway which was blocked by the tractor-trailer. The calculation was made by an expert Civil Engineer [Mr. Smith] who surveyed the accident scene. Another witness who did not measure the point of tangency and who is not an engineer estimated the point of tangency at approximately 100 feet.

*1028 Therefore the evidence shows that the roadway was perfectly straight from where the trailer blocked the highway 96 to 100 feet south. The headlights of the bread truck[[3]] which was parked in the opposing lane to the Allemand vehicle were thirty-one (31) inches above the ground and the bed of the trailer involved in the accident was approximately fifty-one (51) inches above the ground. Thus as noted, [s]upra, the lights of the bread truck were easily visible to Mrs. Allemand as she exited the curve.
One of the witnesses who testified at the trial for the [p]laintiff, a Mr. Wyble, directed a simulation in which a similar tractor-trailer was placed across the highway at the same point as Mr. Proctor's truck had been located. Mr. Wyble parked a van-type truck similar to the bread truck in the southbound lane on the north-side of the truck, and, in accordance with Mr. Pontiff's testimony, the van lights were placed on low beam. Mr. Wyble then drove up to the truck several times in an attempt to discern when the tractor-trailer became visible to an approaching motorist. Mr. Wyble testified that the tractor-trailer did in fact become visible somewhere between the point of tangency of the curve and a hazard marker located forty-nine (49) feet south of the trailer. Mr. Wyble testified that the tractor-trailer could not be seen before that point because of the curve, the head-lights of the bread truck, and the lack of illumination of the obstruction. The Court had the benefit of the testimony of Dr. Dart, an Accident Reconstructionist, who testified on behalf of the [d]efendant Zip's. Dr. Dart was a witness to an accident simulation done by Leonard Adams, a [l]ighting expert. In the simulation done by Mr. Adams no bread truck was placed on the other side of the trailer involved because Mr. Adams had been unaware of the type of vehicle which had been parked there at the time of the accident. Given the absence of the vehicle in the northbound lane on the opposite side of the trailer in the Adam's reconstruction, the Court must discount it because it eliminates what in the Court's opinion is a material ingredient in the scenario of the accident, and that is the presence of headlights on the opposite side of the trailer which gave the impression that the road was clear, and which headlights created a glare source for the Allemand vehicle.
Mr. Joseph Andre was qualified as an expert in accident reconstruction and testified on behalf of the [p]laintiff. He gave the opinion that the presence of the bread truck lights on the opposite side of the trailer gave an illusion of oncoming traffic and thus an illusion of safety ahead of the Allemand vehicle. Given the testimony relative to the tangency of the curve and its distance from the trailer as it was positioned across the highway, Mr. Andre was of the opinion that the very first point at which the trailer could have been seen by any driver approaching it at that time was 100 to 125 feet away. He testified that after seeing the truck at this point if in fact it was seen at this point, Mrs. Allemand would have had to identify it as a hazard and react. He testified that a vehicle traveling 45 miles per hour travels 66 feet per second and both he and Dr. Dart agreed that 2.5 seconds would be an average reaction time to use for an unexpected hazard such as Mr. Proctor's truck. Thus, the average driver would have traveled 165 feet before even reacting and once the driver reacted by braking the vehicle, according to the testimony of both Mr. Andre and Dr. Dart [it] would have required a minimum of 97 feet to brake with the wheels locked. Mr. Andre therefore arrived at an average distance to react and stop of 262 feet.
The Trooper who investigated the accident testified that the Allemand vehicle left 26 feet of skid marks and using Mr. Andre's greatest visibility distance of 125 *1029 feet, Mrs. Allemand's reaction distance therefore was 100 feet considerably less than the average reaction distance of 165 feet agreed to by both Dr. Dart and Mr. Andre. Thus, assuming that Mr. Wyble and Mr. Andre's opinions concerning when the trailer first became visible are accurate, it appears that Mrs. Allemand reacted far more quickly than the average driver would have to the blocked highway and shoulders which suddenly confronted her.
While Dr. Dart never did testify as to at what distance the tractor-trailer could be recognized, he did testify that Mrs. Allemand would have required between 261 and 425 feet to react and stop depending on the rate of braking. He conceded that Mrs. Allemand was forced to interpret and react to a complex and absolutely unexpected event.
Given the proximity of the truck to the tangent of the curve, the least favorable testimony relative to the [p]laintiff concerning reaction time and stopping distance, and considering the skid marks as testified to by the Trooper, the Court is of the opinion that clearly if Mrs. Allemand was driving the speed limit and percieved [sic] the truck across her path at the earliest possible moment that has been testified to, then the trailer would have to have been seen at least 261 feet away in order for Mrs. Ailemand [sic] to have stopped. There was not 261 feet away for Mrs. Allemand to stop within between the point where she could first have seen the trailer and the trailer itself. Therefore the allegation Mrs. Allemand failed to avoid the accident by reason of her not seeing what she should have seen is totally unfounded and is rejected by the Court.
We can find no error in the trial court conclusion that Cynthia Allemand was not at fault in this accident.
Appellants additionally argue that the admission and exclusion of certain photographic evidence prejudiced the trial court decision on this issue. The photographs submitted as Plaintiff's Proffer 1 and 2, and, Defendant-Zip's Proffer 1, 2, and 3, were excluded by the trial court because there was no showing that the photographs taken several years after the accident, accurately reflected the accident scene as it existed on September 23, 1983. Generally, in order for a photograph to be admissible, it need only be established that the photograph depicts what it purports to depict; differences or changes in conditions do not necessarily exclude a photograph where the changes and differences are explained. Bico Enterprises, Inc. v. Cantrell, 413 So.2d 260 (La.App. 3d Cir.1982); Messex v. Louisiana Dept. of Highways, 302 So.2d 40 (La.App. 3d Cir.1974). An explanation of the differences between the accident scene as shown in the proffered photographs (which were taken several years after the accident) and as it existed on the date of the accident was not offered either as a foundation to the introduction of the photographs or on proffer; therefore, we find no error in their exclusion.
Plaintiff's exhibits 25, 26, 27, and 28 consist of three photographs and a videotape which were taken at nighttime by Mr. Wyble during his reconstruction of the instant accident. Inasmuch as this photographic evidence was offered as a depiction of what could be seen by the human eye at the time of the accident, it was improperly admitted. Case v. Arrow Trucking Co., 372 So.2d 670 (La.App. 1st Cir.), writ denied, 375 So.2d 944 (La.1979); Avery v. Scott, 216 So.2d 111 (La.App.2d Cir.1968), writs refused, 253 La. 313, 314, 217 So.2d 410 (1969). However, after reviewing this evidence, we are unable to say that its use prejudiced appellants; the trial court in rendering its decision relied on the opinion testimony of the experts and we believe the exclusion of this evidence would not have changed the outcome of that decision. See Macaluso v. Populis, 339 So.2d 386 (La. App. 1st Cir.1976).

FAULT OF CARO
The omission of Caro which was alleged to have contributed to the occurrence of this accident was the failure of Caro employees to assist Mr. Proctor in backing his truck into the loading dock. On the morning *1030 of September 23, 1983, John Proctor was directed by Weston Winn, the Caro shipping supervisor, to back his rig into the shipping dock. The shipping dock contained five loading bays and extended across the front of the Caro building parallel to La. Hwy. 316; only the two southernmost bays could accommodate eighteen wheelers. Jerry Caro, owner of the Caro business, admitted that it was necessary to obstruct at least one lane of La. Hwy. 316 in order to back into the loading bays. Mr. Caro acknowledged that safety required the warning of approaching traffic, and stated that he expected his employees to help direct traffic if necessary; but, he admitted that his employees were under no formal order to assist truck drivers. Testimony revealed that the Caro building was situated between 70 and 86 feet from La. Hwy. 316. Mr. Caro maintained that it was unnecessary to encroach on the roadway, once in the loading bay, in pulling forward to open trailer doors, as Mr. Proctor had done. Mr. Proctor claimed that it was necessary to block both lanes of traffic to accomplish this.
A threshold issue to be considered in the determination of liability of a party is whether the conduct of that party is a cause-in-fact of harm to another; stated another way, whether the conduct was a substantial factor in bringing about the harm. Dixie Drive It Yourself System New Orleans Co. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962). If the collision would have occurred irrespective of the assistance of Caro employees, then the omission was not a substantial factor or cause-in-fact. See Dixie, 137 So.2d at 302. Clearly, if Caro had exercised supervision over the docking procedure employed by Mr. Proctor, either the unnecessary blockage of the entire roadway could have been prevented or the positioning of flagmen adequate to warn oncoming traffic could have been accomplished, thereby preventing the resultant injuries and death. We find that the failure of Caro to provide adequate docking instruction and supervision was a substantial factor in bringing about this accident.
The determination of the negligence of a party requires a duty-risk analysis; i.e., a consideration of whether the defendant owes a legal duty to the plaintiff and, if so, whether the duty extends to the particular risk encountered by the plaintiff. A property owner is responsible for injuries sustained as a result of a defect or obstruction in the adjoining highway where he has created the hazardous condition or endangers the motorists by his negligence. See Arata v. Orleans Capitol Stores, Inc., 219 La. 1045, 55 So.2d 239 (1951); Lanclos v. Tomlinson, 351 So.2d 1218 (La.App. 3d Cir.), writ denied, 352 So.2d 1023 (La.1977). See also 40 C.J.S. Highways § 253 (1944). We believe that such a duty requires a business proprietor to ensure the safe passage of traffic on an abutting highway where the proprietor constructs his place of business in such a way that encroachment on the adjoining highway is required in order to accomplish the positioning of vehicles on the business premises for the loading and unloading of goods. We also find that this duty imposed on a business proprietor under these circumstances encompasses the risk encountered by the plaintiff herein, that a truck driver through error or negligence would block, without adequate warning, the safe passage of vehicles on the highway.
While we recognize that the duty to control and safely operate a vehicle must be imposed in the first instance on the driver, a degree of negligence is also attributable to Caro in facilitating or allowing the hazardous maneuver complained of herein, though to a lesser extent than that of Proctor. Accordingly, we reverse that part of the trial court judgment finding no liability on the part of Caro, and assess 30% fault to Caro, and 70% fault to appellants.
For the reasons states herein, the lower court judgment is affirmed in part and reversed in part with all costs of this appeal and all costs (including expert witness fees) in the lower court assessed to appellants and to Caro according to their percentage of fault as stated herein.
*1031 AFFIRMED IN PART; REVERSED IN PART.
NOTES
[1] The Caro building, which faced La. Hwy. 316, had five loading docks across the front of the building that were known as "shipping" docks; these docks were normally used to load Caro delivery trucks. The Caro building had three other loading docks which were located to the side or rear of the building; these docks were customarily used for the delivery of produce to Caro by non-Caro trucks.
[2] Originally, appellants also sought to have the amount of damages awarded to plaintiff reduced and to have the trial court finding of no contributory negligence on the part of plaintiff reversed. Additionally, plaintiff had filed an answer seeking to have the damage award increased. These claims were settled prior to oral arguments before this court, and the motions to dismiss these portions of the appeal were granted.
[3] Immediately prior to the collision, a bread delivery truck which had been proceeding in a southerly direction on La. Hwy. 316, came to a stop on the other side of the eighteen-wheeler. The headlights of this truck were shown to have been visible to the occupants of plaintiff's vehicle from beneath the trailer bed. The bread truck was driven by Reggie Pontiff.