GULOTTA, Chief Judge.
In this two vehicle collision case, plaintiffs appeal from a judgment dismissing their suit after a jury trial on the merits. We affirm.
The accident occurred in wet conditions on May 30, 1979, at the intersection of Coliseum Street and Jackson Avenue in New Orleans. Stephanie Richards, who had been proceeding riverbound on Jackson in her 1977 Oldsmobile station wagon, was attempting to execute a U-turn at the Coliseum Street corner in the narrow median or neutral ground separating the opposite traffic lanes on Jackson. While Richards was stopped at the median to await the passage of lakebound traffic on Jackson, her vehicle was struck broadside between the front and rear doors on the driver’s side by a pick-up truck driven by Howard Everett, Jr., an uninsured motorist who was proceeding riverbound on Jackson.
Plaintiffs’ suit for damages against Everett and their own uninsured motorist carrier was dismissed after the jury, in response to interrogatories, found Everett guilty of negligence proximately causing the accident, but also found Richards con-tributorily negligent. The jury further found that Everett did not have the last clear chance to avoid the accident.[1]
Appealing, plaintiffs present several issues for review. They contend: 1) that a chart of the accident scene by the defendant insurer’s expert was improperly admitted into evidence; 2) that the jury instructions were improperly weighted in favor of the defendant because the trial judge overemphasized the duty of the plaintiff left turning motorist as compared to that of the following defendant driver; 3) that a confusing written interrogatory was submitted to the jury on the issue of last clear chance; 4) that the jury erroneously failed to find the defendant motorist’s negligence to be the cause in fact of the accident; and 5) that the verdict was contrary to the law and the evidence. We find no merit to these contentions.
ADMISSIBILITY OF EVIDENCE
Plaintiffs contend that the verdict was tainted by improperly admitted charts of the accident scene prepared by the defendant’s expert. Plaintiffs point out that defendant’s exhibits, which were based on a survey made by engineers in December, 1983, failed to show the correct dimensions of the lanes of Jackson Avenue as they existed in 1979 at the time of the accident. Plaintiffs specifically quarrel with the nine foot width of the left, median riverbound lane of Jackson Avenue as shown on the chart, a dimension in conflict with the estimate of plaintiffs’ expert that the width of *352 the left lane was 10 feet. Plaintiffs argue that the measurement of the left lane is crucial because the defendant driver asserted that the plaintiff motorist made an improper left turn from the right, riverbound lane of Jackson across his path in the left lane. We do not agree.
Defendant’s expert testified that the drawings introduced into evidence were based on measurements actually made by him and his survey team, and the charts clearly indicate that the survey took place December 19, 1983. Although the accident occurred in 1979 and plaintiffs’ expert was of the opinion that the left lane was one foot wider than indicated on defendant’s chart, these discrepancies go to the weight to be given the evidence rather than to its admissibility. Under these circumstances, the trial judge did not err in admitting the charts into evidence over plaintiffs’ objection. It was up to the jury to give the charts whatever weight they felt was appropriate considering the opposing testimony of plaintiffs’ expert and the relevant dates of the accident and the survey.
JURY INSTRUCTIONS
Plaintiffs further claim the trial judge erred in giving six charges to the jury on the duty of a left turning motorist and three additional charges on the duty of a leading vehicle. According to plaintiffs, the effect of the trial judge’s instructions was to emphasize the plaintiff driver’s duties while minimizing those of the defendant driver, thereby unfairly influencing the jury to find plaintiff contributorily negligent. We disagree.
In the course of instructing the jury on the concepts of negligence and contributory negligence, the trial judge explained the various duties required of both a left turning motorist and a following motorist.[2]
*353 A trial judge is not required to give instructions submitted by either party if the instructions actually given properly point out the issues in light of the evidence. McCarter v. Liberty Mut. Ins. Co., 436 So.2d 726 (La.App. 4th Cir.1983), writ denied 440 So.2d 145 (La.1983); McElroy v. Vest, 407 So.2d 25 (La.App. 3rd Cir.1981), writ denied 412 So.2d 83 (La.1982). Adequate instructions are those that clearly point out the issues and provide correct principles of law for the jury to apply, whereas instructions that mislead, confuse, or omit an essential legal principle applicable to the case may constitute reversible error. Laborde v. Velsicol Chemical Corp., 474 So.2d 1320 (La.App. 3rd Cir.1985) writs denied 480 So.2d 738 (La.1986). The instructions must be reviewed as a whole in light of the circumstances of the case, however, and reversal is not required unless the charges were so incorrect or inadequate as to preclude the jury from reaching a verdict based on the law and the facts. Laborde v. Veliscol Chemical Corp. supra.
Having reviewed the jury instructions in the instant case, we conclude that they adequately, reasonably, and effectively guided the jury on the principles of the law of negligence and contributory negligence applicable to the case. Although the charges are somewhat repetitious, when the instructions are considered as a whole it is clear that the trial judge struck an adequate balance between the relative duties owed by the lead, left turning motorist and the following motorist. We cannot conclude that the jury was misled, confused, or unfairly baised in favor of the defendant by the instructions given.
JURY INTERROGATORIES
As a further basis for reversal, plaintiffs contend that the written interrogatories confused the jury and effectively prevented them from applying the doctrine of last clear chance. Plaintiffs point out that rather than first asking for a general verdict of liability and then submitting questions of fact to test the jury’s verdict, the interrogatories in the instant case essentially provided the jury with a “written set of instructions of what to do” and led them “step by step” to a verdict.
Plaintiffs also point out that a poll of the jury after the verdict was returned demonstrated that the jurors were confused about the last clear chance issue. Although the written form filled in by the foreman indicates that three members of the twelve person jury concluded that Everett had the last clear chance to avoid the accident, a later oral poll of the jury in the courtroom at first indicated that the vote was four yes and eight no. Two additional polls, however, indicated that the jury voted three yes and nine no, which was consistent with their written response to the interrogatory.
The jury interrogatories clearly set forth the pertinent and relevant questions to determine the factual issues in this case. The first interrogatory question was whether the defendant Everett was guilty of negligence that was the proximate cause of the accident. The second interrogatory was whether Mrs. Richards was guilty of contributory negligence that proximately caused the accident. The jury responded twelve yes, zero no to question number one, and voted eleven yes and one no to question number two. Their response to the third interrogatory, concerning last clear chance, was as follows:
“If you have found the Defendant, Howard Everett, the uninsured motorist, guilty of negligence and the Plaintiff, Stephanie M. Richards guilty of contributory negligence, do you find that the *354 Defendant Howard Everett had the last clear chance to avoid this accident?
YES_3_ NO_9_”
Despite plaintiffs’ arguments to the contrary, the jury had been properly charged on the law of last clear chance and was prepared to confront the written interrogatory on this issue.
A trial judge has discretion to submit a case to the jury on special interrogatories; and in matters involving several claims and defenses, the trial judge should direct interrogatories to the jury that allow it to make separate findings on each claim and the defense applicable to that claim. Corceller v. Brooks, 347 So.2d 274 (La.App. 4th Cir.1977), writ denied 350 So.2d 1223 (La.1977). Considering the evidence, as a whole in the instant case, we conclude the trial judge submitted proper interrogatories to the jury on the issues of negligence, contributory negligence, and last clear chance.
NEGLIGENCE AND CONTRIBUTORY NEGLIGENCE
The dispute in this case is whether Mrs. Richards attempted to execute a left turn from the left lane of traffic or from the right lane.
Plaintiffs argue that because the uncon-tradicted evidence establishes that the plaintiff motorist was in a stopped position when struck by the defendant vehicle, the evidence does not support the jury’s finding that she was contributorily negligent. Plaintiffs further claim that the evidence establishes that the defendant driver had the last clear chance to avoid the accident since he was aware of Mrs. Richards’s peril and had time either to stop or to swerve around the Richards vehicle. We disagree.
Stephanie Richards testified that during a light rain she was proceeding riverbound on Jackson Avenue in the left lane. Her turn signal was on as she neared the intersection of Coliseum and Jackson, and she “swung out on a wide angle” so as to make a U-tum on Jackson. According to Richards she was in the median at the intersection of Coliseum and Jackson for 30 seconds while waiting for lakebound traffic on Jackson to clear when she was hit by the pick-up truck driven by Everett. The impact occurred on the driver’s side of plaintiff’s car near the center door post.
During the course of the trial, a dispute arose as to whether Mrs. Richards had told the investigating officer that she had initiated a left turn from the right riverbound lane of Jackson Avenue. Richards denied making the statement. Although stating that she had “swung wide”, she asserted that she was in the left lane when she began to make the turn, but acknowledged that she could not remember if her windows had been foggy or if she had used her outside left rear view mirror. On the other hand, the investigating officer stated that Richards did admit making a left turn from an improper lane.
In deposition, Howard Everett stated that he was traveling in the left lane on Jackson Avenue and that Mrs. Richards was in the right lane. According to Everett, Richards passed him and was a couple of car lengths in front of him when she made a left turn from the right lane, cutting directly in front of him. He applied his brakes but could do nothing to avoid the accident. He also stated that Richards had no turn signal on, and that her turning maneuver was totally unexpected.
Blane Woodfin, a medical student who assisted plaintiff for her injuries at the scene, witnessed the accident. According to Woodfin, as he was traveling riverbound behind Everett’s truck, he noticed that the Richards vehicle had “stopped or was barely moving” before the impact. He stated that the plaintiff vehicle was “broadside” to the truck at approximately a 70-75 degree angle. He further stated that while he was administering first aid to Richards she told him that she had made “a proper turn from the left lane”. He corroborated Mrs. Richards’s statement that she did not tell the investigating officer that she had made an improper turn. Woodfin indicated that the defendant truck driver could have gone around plaintiff’s car and avoided the accident.
Kerry Granderson, the investigating officer, stated that he arrived at the scene *355 three or four minutes after the collision. According to Granderson, Mrs. Richards told him she had been making a turn from the right lane to go to the left. The officer further testified that the plaintiff motorist changed her version of the accident after talking to an “elderly gentleman” who later arrived at the scene. Granderson further stated that Everett told him the Richards vehicle had cut in front of him and that he could not avoid the accident.
Dr. Robert Brenner, plaintiffs’ expert in accident analysis, described the accident as a typical “T-bone type” of crash since the vehicles collided at a near perpendicular angle. According to Brenner, the absence of scratch marks on the Richards vehicle indicated that it was stationary at the moment of impact. This witness further stated that this was not a high speed crash and that Everett could have gone around the Richard’s vehicle, assuming there were no other cars in the right lane or parking lane. Brenner also admitted that he had neither surveyed the accident site nor seen the Everett vehicle.
Leonidas Denson, defendant’s expert in accident reconstruction, had surveyed the intersection, had reviewed the depositions of the investigating officer and Mrs. Richards as well as the police report, and had made drawings based on each driver’s claims. Denson stated that it would have been impossible for Richards to have made a U-turn from the left lane at the time of the accident and remain completely within that lane, considering the narrow lane width and the length of the station wagon. This expert was of the opinion that the Richards vehicle had been in the right lane and had made a left turn in front of Everett’s truck. Considering that Richards had turned in front of Everett’s vehicle, Denson stated that Everett would not have had time to avoid the accident.
The evidence considered, we cannot say the jury erred, based on credibility, in concluding that Everett was negligent, that his negligence was a proximate cause of the accident, and that Richards was contribu-torily negligent.
LAST CLEAR CHANCE
Under tort law as it existed prior to the adoption of comparative negligence, the last clear chance doctrine permits an injured party to recover despite a finding of contributory negligence. For this doctrine to apply, the following three criteria must be satisfied: 1) the plaintiff must have been in a position of peril of which he was unaware, or from which he was unable to extricate himself; 2) the defendant must have been in a position to discover plaintiff’s peril; 3) at the time the defendant discovers the peril or should have discovered it by the exercise of reasonable care, the defendant could have avoided the accident. Jackson v. Watson, 360 So.2d 582 (La.App. 4th Cir.1978), writ denied 362 So.2d 1389 (La.1978); Gendusa v. Rabel, 212 So.2d 854 (La.App. 4th Cir.1968); Miller v. Carter, 346 So.2d 748 (La.App. 1st Cir.1977), writ denied 349 So.2d 1272 (La.1977); Lavigne v. Southern Farm Bureau Casualty Ins. Co., 125 So.2d 430 (La.App. 3rd Cir.1960). Furthermore, the party relying on the doctrine of last clear chance bears the burden of proving it by a preponderance of the evidence. Gendusa v. Rabel, supra. Additionally, the doctrine is a question of fact and each case must turn in its own facts. Miller v. Carter, supra.
Applying this law to the facts of the instant case, we find no error in the jury’s finding that Everett did not have the last clear chance to avoid the accident. According to the defendant driver, after the plaintiff unexpectedly turned in front of him, he applied his brakes but could do nothing to avoid the collision. This testimony, was supported by defendant’s expert in accident reconstruction. Assuming that the jury believed this testimony, we cannot say the jury was clearly wrong in concluding that the defendant driver did not have the last clear chance to avoid the accident.
Lastly, plaintiffs would have this court apply the principles of Baumgartner v. State Farm Mutual Automobile Insurance, Co., 356 So.2d 400 (La.1978) to this case. They argue that Everett’s duty was broad enough to encompass the fact that Richards might suddenly and without *356 warning cut in front of him. Baumgart-ner, however, involved the duty owed to a pedestrian by a motorist. In the instant case, because we have a situation involving two motorists, there is no basis to apply the Baumgartner rationale.
Having so concluded, we affirm the judgment of the trial court.
AFFIRMED.

. Because this collision occurred before the adoption of comparative negligence in Louisiana, the jury’s findings that the plaintiff motorist was contributorily negligent and that the defendant driver did not have the last clear chance barred plaintiffs from recovery under tort law as it existed at the time of the accident.

. In pertinent part, the trial judge charged the jury as follows:
"In our Louisiana law the driver of a motor vehicle has a statutory duty to use reasonable and prudent care in operating a vehicle. Our statutes require that the motorist not follow another vehicle more closely than is reasonable and prudent. It is intended to require the motorist to make an assessment of the conditions and circumstanes and to maintain distance behind such vehicle which is reasonable.
Generally a motorist following other traffic must stay a safe distance behind so as to enable himself to stop in sudden emergency.
A motorist who is making a left turn has a right to assume that oncoming and following motorists will observe all the various duties imposed by law and is not required to wait until there is no traffic in sight before attempting to make a turn, but may turn after he has made a careful and prudent survey of traffic conditions about him and reasonably believes the conditions warrant making a turn.
It is well settled that a motorist who attempts a left turn or who attempts a turn from a direct line on the public highways of the State must ascertain in advance that the turn can be made without endangering normal overtaking or oncoming traffic and the giving of a signal is not the only burden placed on the motorist for he must, in addition, check the rear immediately before the turn is attempted to ascertain whether it can be executed safely.
I charge you that under Louisiana law, a left turning motorist must show that they used all reasonable care in ascertaining whether a left turn could be made in safety, not only to themselves, but to oncoiming or passing motorists. However, it has been held that a left turning motorist cannot discharge his burden of ascertaining whether the turn can be made in safety by making his observations some distance from the intersection, but he is required to look to his rear immediately before attempting to turn.
Before a vehicle may turn fom one lane to another on a public highway, the driver must first ascertain whether or not he can do so without endangering overtaking vehicles.
A driver is entitled to rely upon the assumption that the car ahead is being driven with care and caution and in accordance with the law of the road and that the driver thereof will not commit acts of negligence which will endanger a following vehicle.
A motorist shall not turn her vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety. The law does impose upon a following motorist a duty to exercise great care, however, an exception to this general rule is recognized where the driver of a lead vehicle negligently creates a hazard which the following driver cannot reasonably avoid.
While our law imposes a duty on following motorists to keep their vehicles under control and to observe and follow a leading vehicle at a safe distance, there is also a duty on the driver of the lead vehicle to use the road in the usual manner. The driver of the following automobile can assume that the driver of the car ahead will not commit an act of negligence which will endanger following traffic.
A left turning motorist bears a higher standard of care than ordinary care. A person who attempts to make a left turn must ascertain *353 before doing so that the turn can be made safely without endangering themselves or other motorist who are in close proximity. Caution must be exercised in the light of all circumstances, which includes the nearness, speed and direction of other vehicles. This includes making a proper observation to the rear for passing traffic just prior to the begining of the left rurn.
The driver of the following automobile is entitled to rely upon the assumption that the automobile ahead is being driven with care and caution in accordance with the laws of the road and that the driver thereof will not commit acts of negligence which will endanger the following traffic.”