607 So.2d 1050 (1992)
Larry CRADEUR and Gale Cradeur, Plaintiffs-Appellees/Appellants,
v.
STATE of Louisiana, Through the DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, Defendant-Appellant/Appellee.
No. 91-821.
Court of Appeal of Louisiana, Third Circuit.
November 4, 1992.
*1051 Marc T. Amy, Abbeville, for defendant/appellant.
Tynes, Fraser, Morris & Wheeler, Maurice Tynes, Lake Charles, for plaintiff/appellee.
Before DOMENGEAUX, C.J., LABORDE, J., and PATIN[*], J. Pro Tem.
DOMENGEAUX, Chief Judge.
Donna Cradeur, 20, was killed in a one vehicle accident which occurred while she was riding in a 1980 Mazda driven by 16 year old Shannon Benoit. Donna's parents, Larry and Gale Cradeur, filed a wrongful death action against the Department of Transportation and Development, alleging that a 3-5" shoulder drop-off caused Shannon to lose control of her vehicle. After a bench trial, the court found DOTD 70% at fault in the accident and Shannon 30% at fault. The court awarded the Cradeurs each $150,000, subject to a reduction for the percentage of fault assessed to Shannon. Both DOTD and the Cradeurs appeal.

FACTS
The accident occurred at approximately 3:00 p.m. on June 9, 1985, as Donna and Shannon were returning to Lake Charles after they had visited a friend in Marksville. While driving westward on La. Highway 106 at 50-55 mph, Shannon encountered a left hand, banked curve about 430' long near the Evangeline/Avoyelles Parish boundary line. The curve had a posted advisory speed of 35 mph, and it was marked with three chevron signs showing its direction.
In her deposition, Shannon testified that a field of standing corn on her left prevented her from appreciating the severity of the curve. She entered the curve at about 50 mph, but slowed down to 35-40 mph. She negotiated the curve for about 265' *1052 until her vehicle's right tires left the roadway. She continued to travel with two tires on the shoulder for about 101', at which point she attempted to re-enter the highway. Upon re-entry, the vehicle began a rapid rotation, slid across the roadway, and crashed into a metal culvert. Donna was killed, and Shannon was seriously injured.
Trooper Frederick Fontenot, the investigating officer, prepared a schematic diagram of the site and took pictures of the scene immediately after the accident. Tire tracks on the shoulder, as depicted in the photographs, indicate that the point of reentry was at the deepest part of an 18-20' long drop-off between the roadway and the shoulder. At trial, the parties presented much conflicting testimony, both expert and lay, regarding the exact depth of the drop-off at re-entry and the effect of the drop-off, if any, on the vehicle's path after re-entry.
Trooper Fontenot, who was accepted by the court as an expert in accident investigation, testified that he did not measure the drop-off, but he "eyeballed" it at approximately 2". On his official accident report, he checked "defective shoulders" as an observed roadway condition. At trial, he stated he believed the shoulder was a contributing factor, but he also believed the driver oversteered as she re-entered the highway.
Raymond Bradley, Shannon's stepfather, photographed the drop-off about a week after the accident. He, too, did not measure it, but he estimated its depth at 3-4". Lesson LeGros, an investigator hired by the Cradeurs, measured the drop-off on several occasions, the earliest being on January 15, 1986, some six months after the accident. On that date, LeGros measured a 4½" drop at the point of re-entry and a 3" drop several feet further down the road. LeGros also visited the site on three other occasions from about a year and a half after the accident through five years after the accident. He testified he measured the shoulder each time, and the subsequent measurements were approximately the same as those taken on his first visit, six months after the accident.
Gene Moody, the plaintiffs' accident reconstruction expert, testified that he believed Shannon oversteered as she attempted to re-enter the highway. The rapid rotation after re-entry, however, was caused by the vehicle's right wheel "scrubbing" for one wheel rotation against the 4½" drop. He further stated that a 2" drop would not have caused the drastic change in direction which was evidenced by yaw marks left on the roadway. The experts agreed that yaw marks are the result of the tires rolling forward while the vehicle is sliding sideways.
Duaine Evans, DOTD's expert, attributed the accident exclusively to driver error, specifically speeding and oversteering. He testified that even if the drop-off were 4½", it would not have contributed to the accident because Shannon had already lost control of her vehicle before she re-entered the highway. He based this conclusion on photographs of the vehicle's tire tracks which indicated the car was in a 10° rotation on the shoulder. Evans considered the substantial change in rotation that occurred upon re-entry to be a continuation of the rotation that had already begun on the shoulder.
At the conclusion of the evidence, the trial court accepted Moody's testimony, finding that on the date of the accident, the drop-off was 4½", that the vehicle's tires scrubbed against the pavement, producing the rapid rotation, and that the driver was inattentive in ignoring the posted warning signs.[1] The court assessed DOTD with 70% fault, the driver with 30% fault.

RES JUDICATA
DOTD first argues the trial court erred in overruling DOTD's exception of res judicata, the exception being based upon a release executed by the Cradeurs three days after the accident. The Cradeurs executed the release, for policy limits *1053 of $10,000, in favor of Shannon Benoit, Peggy Bradley (Shannon's mother) and State Farm Mutual Automobile Insurance Company (Shannon's liability insurer). The document also purported to release "all other persons, firms and corporations who might be liable...." The names of Benoit, Bradley and State Farm are either handwritten or typed in blanks on the form; the quoted language is found in the printed portion of the form.
In Aymond v. State, through the Department of Highways, 333 So.2d 380 (La. App. 3d Cir.1976), writ denied, 337 So.2d 875 (La.1976), this court considered the effect of the same above language as applied to a very similar situation. Aymond also presented the situation where the survivors of a guest passenger who was killed in a one car accident first released the driver's insurer and then pursued a claim against DOTD. In Aymond, we held DOTD could not claim any advantage from the release's broad, unrestricted language because DOTD was not a party to the release, nor did DOTD give any consideration for the execution of the release.
The Aymond case does contain one important distinction. There, the driver was absolved of any negligence and was therefore not solidarily bound with DOTD. In the instant case, for the reasons discussed below, we affirm the trial court's finding that Shannon and DOTD are joint tortfeasors.
In Highlands Insurance Co. v. Missouri Pacific Railroad Co., 532 So.2d 317 (La. App. 3d Cir.1988), affirmed, 540 So.2d 287 (La.1989), we summarized the recent changes in the law regarding the effect of the release of one solidary obligor as to the other obligors:
Former LSA-C.C. Art. 2203 provided that the release of one solidary obligor had the effect of releasing all solidary obligors unless the creditor expressly reserved rights against the others. This article was repealed upon the enactment of LSA-C.C. Art. 1803 which became effective on January 1, 198[5]. LSA-C.C. Art. 1803 now provides that the remission of the debt as to one solidary obligor benefits the other solidary obligor in the amount of the portion of the released obligor, and it is clear that now the remission of debt in favor of one obligor does not extinguish the solidary obligation. See Comments (a) to LSA-C.C. Art. 1803.
DOTD was not a party to the release in question, and it gave no consideration for the execution of this release. The record contains no evidence that the Cradeurs intended to release anyone other than Shannon, her mother, and her insurer. Under Civil Code art. 1803, the Cradeurs were not required to reserve their rights against DOTD in the release. The only advantage DOTD may claim from the release is the reduction of its debt by Shannon's portion. We find no error in the trial court's overruling of the exception of res judicata.

LIABILITY AND APPORTIONMENT OF FAULT
In its second assignment of error, DOTD argues the trial court erred in admitting the testimony of Lesson LeGros because his measurements, taken between six months and five years after the accident, were irrelevant to the condition of the roadway at the time of the accident.
Both Trooper Fontenot and Duaine Evans testified that the shoulder could change on a daily basis under certain conditions such as heavy rainfall and heavy off-road traffic. Gene Moody, however, testified that the shoulder was relatively stable. LeGros measured the drop-off several times within five years of the accident, with none of the measurements significantly varying from his initial one taken six months after the accident. Further, his first measurement of 4½" was in line with Raymond Bradley's estimate of 3-4" made just one week after the accident. The admission of LeGros's testimony, as well as any weight given to it, is within the province of the trial court. Based upon the above, we find no error in the trial court's decision to admit this testimony.
In its next three assignments of error, DOTD argues the trial court erred in relying upon the expert opinion of Gene *1054 Moody, in apportioning 70% fault to DOTD, and in finding the roadway was not reasonably safe. The Cradeurs answered the appeal, contending the court erred in assessing 30% fault to Shannon. As questions of fact, these issues are generally left to the trier of fact, and such findings should not be disturbed absent clear or manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
All of the evidence presented, which included expert testimony, photographs, and diagrams, indicated that Shannon's vehicle went into a sudden, rapid rotation upon reentry. The experts disagreed as to the cause of the rotation. Gene Moody testified that the accident could not have happened without the combination of driver oversteer and the vehicle's tire scrubbing against the drop-off. Trooper Fontenot and Duaine Evans did not believe the accident was a scrubbing situation. Evans attributed the sudden rotation after re-entry to a continuation of the rotation that had already begun on the shoulder. Perhaps the most telling, and certainly the most reliable, evidence on this point are the photographs taken by Trooper Fontenot immediately after the accident. These photographs show tire tracks on the shoulder leading to the most severe point of the drop-off, although the depth of the drop-off is not ascertainable. The tracks indicate the vehicle was in a slight rotation on the shoulder; however, Evans estimated that rotation to be only 10°. Considering the entirety of the record, we can find no error in the trial court's acceptance of Moody's opinion that the drop-off contributed to the vehicle's sudden increase in rotation upon re-entry.
DOTD has the basic duty to maintain all highways in the state highway system. The maintenance of highway shoulders in a reasonably safe condition is included within the duties of DOTD, and this duty encompasses the obligation to protect a motorist who inadvertently drives onto the shoulder. Although DOTD is not an insurer of the safety of motorists using the state highways, it cannot knowingly allow a condition to exist which is hazardous to a reasonably prudent person. DOTD may be liable for negligence if it is actually or constructively aware of the hazardous condition or defect and fails to take corrective action within a reasonable time. Rochelle v. State, Through the Department of Transportation and Development, 570 So.2d 13 (La.App. 3d Cir.1990), writ denied, 572 So.2d 93 (La.1991).
The experts were in agreement that a 4½" drop-off is a hazardous condition. There is also an extensive body of jurisprudence imposing liability on DOTD for knowingly allowing such a condition to exist. See Brown v. State, through the Department of Transportation and Development, 604 So.2d 99 (La.App. 3d Cir.1992), and the cases cited therein. We find no error in the trial court's conclusion that the 4½" drop-off presented an unreasonably dangerous condition.
Both DOTD and the Cradeurs object to the percentages of fault assigned by the trial court. The trial court's assessment of 70% fault to DOTD was based on its acceptance of Gene Moody's testimony. We have already determined that the court did not err in relying on this testimony. The court assessed Shannon with 30% fault, finding she was inattentive and was exceeding the posted advisory speed for the curve. We also find no error in this conclusion.
All the experts, including the plaintiffs', testified that driver error contributed to this accident. The curve was marked with an advisory speed of 35 mph and with chevron signs indicating its direction. The plaintiffs attempted to show that the chevron signs were obscured by vegetation, but the signs are clearly visible in the photographs taken by Trooper Fontenot. In spite of the posted warnings, Shannon failed to enter the curve at a safe speed. True, Shannon was an inexperienced driver who had never taken this curve from this direction, and the presence of the standing corn on the left prevented her from appreciating the curve's severity. (Indeed, the trial court may have relied on these factors in its decision to assess only 30% fault to Shannon.) However, Shannon's inexperience *1055 cannot completely excuse her failure to obey the posted traffic warnings. The trial court's apportionment of fault in this case was not manifestly erroneous.

QUANTUM
DOTD and the Cradeurs argue the trial court abused its discretion in awarding $150,000 to each of Donna's parents, DOTD contending the award is excessive and the Cradeurs claiming it is inadequate.
Before a court of appeal can disturb a quantum award, the record must clearly reveal that the trier of fact abused its discretion in making the award; only after finding that the record supports that the lower court abused its much discretion can an appellate court disturb the award and then only to the extent of lowering it or raising it to highest or lowest point which is reasonably within the discretion afforded that court. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). Prior awards under similar circumstances serve only as a general guide. The true question is whether the present award is greatly disproportionate to the mass of past awards for truly similar injuries. Reck v. Stevens, 373 So.2d 498 (La.1979).
Donna was 20 years old at the time of her death. She had graduated from LaGrange High School where she was a good student and was active in various extra curricular activities. Although Donna was no longer a minor and was employed at the time of her death, she still lived with her parents. She also worked for the same company that employed her mother. After reviewing the wrongful death awards in the jurisprudence, we do not find the amount of $150,000 to each parent to be an abuse of the trial court's discretion. See, for example, Moreau v. State, through the Department of Transportation and Development, 527 So.2d 1221 (La.App. 3d Cir.1988).
For the above reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to defendant, the Department of Transportation and Development, to the extent allowed by law.
AFFIRMED.
NOTES
[*] Judge John A. Patin, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] The trial court also relied upon maintenance records to conclude DOTD had knowledge of the defective shoulder. DOTD has not objected to this finding on appeal.