692 So.2d 604 (1997)
Joseph E. TASSIN, et al., Plaintiff-Appellee,
v.
STATE FARM INSURANCE COMPANY, et al., Defendant-Appellant.
No. 96-754.
Court of Appeal of Louisiana, Third Circuit.
March 5, 1997.
Thomas Overton Wells, Alexandria, for plaintiff-appellee.
Owen Murrah Goudelocke, Danial Vidrine, Baton Rouge, for State, Dept. of Transp. and Development.
R. Stuart Wright, Natchitoches, for Donnie Parker, et al.
*605 David Payne Spence, Alexandria, for Liberty Lloyds Ins. Co.
Before THIBODEAUX, SAUNDERS and DECUIR, JJ.
SAUNDERS, Judge.
This appeal arises from litigation involving an allegedly defective shoulder case in which the State of Louisiana, Department of Transportation and Development, was held twenty (20%) liable for injuries sustained when plaintiff's vehicle collided with a truck blocking the travel portion of a highway. At the time of the accident, the truck was being used to extricate a third vehicle that had become stuck on the shoulder of the road. We reverse the finding of legal liability against the State.

FACTS
On August 22, 1992, Jerry Brevelle and Matthew Phillips and their passengers drove separate vehicles to a party being held on Mundy Loop Road, which intersected Highway 8 in Grant Parish. Both Brevelle's and Phillips' automobiles became stuck in the mud on the shoulder of Highway 8, where they had stopped in anticipation of a U-turn after passing Mundy Loop Road.
Sometime after Brevelle and Phillips unsuccessfully attempted to dislodge their vehicles, Mr. Donnie Parker, after hearing the spinning of the automobile tires from his father-in-law's residence nearby, drove his Ford one-ton pickup truck to the scene to offer assistance. Believing he was protected by flagmen assigned to stop traffic coming from either direction, good Samaritan Parker sought to extricate the bogged vehicles by using his truck. To do so required that he block La. Highway 8.
This litigation ensued when a vehicle driven by plaintiff, Joseph E. Tassin, who was driving under the influence of alcohol,[1] failed to heed the warnings of the flagmen in the eastbound lane of travel and collided with Mr. Parker's Ford truck.[2] Following trial on the merits, the trial court concluded that plaintiff had proven general damages of $65,000.00, plus $1,760.00 for lost wages and $29,002.26 in medical expenses. Additionally, it concluded that plaintiff was 40% at fault for the accident as was codefendant, Donnie Parker.
This appeal is limited to the trial court's assessment of 20% on the part of the State of Louisiana, through its Department of Transportation and Development.[3]

ERRORS ASSIGNED
The State assigns a total of eight (8) errors, of which we find dispositive the State's argument that its legal duty to provide reasonably safe shoulders did not extend to protect the plaintiff.
In order to determine whether liability exists under the facts of a particular case, our court has adopted a duty-risk analysis. Under this analysis plaintiff must prove:
(1) the conduct in question was the cause-in-fact of the resulting harm
(2) defendant owed a duty of care to plaintiff
(3) the requisite duty was breached by the defendant
(4) the risk of harm was within the scope of protection afforded by the duty breached

Faucheaux v. Terrebonne Consolidated Government, 615 So.2d 289 (La.1993); Mart v. Hill, 505 So.2d 1120, 1122 (La. 1987). Whether a duty is owed is a question of law. Faucheaux, 615 So.2d at 292; Harris v. Pizza Hut of La., Inc., 455 So.2d 1364, 1371 (La.1984). Whether defendant has breached a duty owed is a question of fact. See Annis v. Shapiro, 517 So.2d 1237 (La.App. 4th Cir.1987).
*606 Mundy v. Dept. of Health & Human Res., 620 So.2d 811, 813 (La.1993).
In the context of defective shoulder cases like the one presently before us, the State is the owner and the following principles apply:
LIABILITY OF DOTD
A duty founded in statute and recognized by the jurisprudence exists on the part of the DOTD to maintain the public highways in a condition that is reasonably safe for persons exercising ordinary care and reasonable prudence. This duty to maintain extends to the shoulders of the highway as well. LSA-R.S. 48:1(11), (21), 48:21; Watson v. Morrison, 340 So.2d 588 (La.App. 1st Cir.1976), writs denied, 341 So.2d 1134 (La.1977); 342 So.2d 218 (La. 1977); Rue v. State Department of Highways, 372 So.2d 1197 (La.1979); Payne v. Louisiana Dept. of Transp., Etc., 424 So.2d 324 (La.App. 1st Cir.1982); Palermo v. Allstate Insurance Company, 415 So.2d 437 (La.App. 1st Cir.1982) ... In LeBlanc v. State, 419 So.2d 853, 854 (La.1982), the Louisiana Supreme Court stated:
"The Department's duty to maintain highway shoulders is imposed to protect a motorist from the risk of injury produced by a combination of the motorist's inadvertent encounter with an unexpected, sharp dropoff from the roadway and her consequent instinctive oversteering of her vehicle."
....
Liability based on negligence is imposed when the DOTD is actually or constructively aware of a hazardous condition and fails to take corrective action within a reasonable time. Sinitiere v. Lavergne, 391 So.2d 821 (La.1980) ...
The maintenance of our highways in a reasonably safe condition is paramount to the safety of the public. As a matter of public policy it is vital that there be an accountable entity to whom the public can look for adequate maintenance of the roadways as well as for redress in the event that a defective condition in the highway precipitates injury. This duty to maintain the public roads and highways has been statutorily imposed on the DOTD. LSA-R.S. 48:21.
Robinson v. State, Through Dept. of Transp., 454 So.2d 257, 260-61 (La.App. 1 Cir.), writ denied, 458 So.2d 122 (La.1984).
Applying this analysis, the cases are legion where the State has been found liable to drivers and passengers in errant vehicles for its failure to repair ruts or eliminate abrupt drop-offs in the shoulders of highways it is charged to maintain. See, e.g., Sinitiere v. Lavergne, 391 So.2d 821 (La.1980); Rue v. State, Dept. of Highways, 372 So.2d 1197 (La.1979); Brown v. Department of Transp., 604 So.2d 99 (La.App. 3 Cir.1992); Grappe v. State, Dept. of Transp. and Dev., 462 So.2d 1337 (La.App. 3 Cir.1985); Robinson v. State, Through Dept. of Transp., 454 So.2d 257 (La.App. 1 Cir.1984). The rationale for extending liability to such drop-off victims is clear: "an implicit necessity for the functional use of a shoulder is a connection between the roadway and shoulder that allows for safe gradual movement from one to the other." Sinitiere, 391 So.2d at 825. Indeed:
A motorist has a right to assume that a highway shoulder, the function of which is to accommodate motor vehicles intentionally or unintentionally driven thereon, is maintained in a reasonably safe condition. Conversely the Highway Department's duty to maintain a safe shoulder encompasses the foreseeable risk that for any number of reasons, including simple inadvertence, a motorist might find himself traveling on, or partially on, the shoulder.
Rue, 372 So.2d at 1199.
Nonetheless, the State's liability is not a given, for:
It has been repeatedly stated that the Department is not a guarantor of the safety of travelers but, rather, owes a duty to keep the highways and its shoulders reasonably safe for non-negligent motorists. Liability based upon negligence is imposed when the Department is actually or constructively aware of a hazardous condition and fails to take corrective action within a reasonable time.
Sinitiere, 391 So.2d at 824-25. In accord, Lewis v. State, Through DOTD, 94-2370 (La.4/21/95); 654 So.2d 311; Bush v. State *607 Through La. DOTD, 542 So.2d 721 (La.App. 4 Cir.1989).
Defendant cites Joseph v. Ennis, 560 So.2d 894 (La.App. 1 Cir.1990) and Snider v. Pagragan, 480 So.2d 1053 (La.App. 5 Cir.1985). In Joseph, a motorist's whose right wheel fell off the paved portion of a road construction project became helplessly stuck, and a good Samaritan who came to her aid was injured when a chunk of concrete flew into his knee; the State was absolved of liability for injuries befalling an attempted rescuer because "the injury suffered by plaintiff did not fall within the ambit of the protection afforded by DOTD's duty to maintain the State's highways and shoulders in a reasonably safe condition." Joseph, 560 So.2d at 896. Likewise, in Snider, 480 So.2d 1053, the State was absolved of legal liability where a landowner "had on the edge of his property a post consisting of a short iron pipe protruding from a concrete base" upon which a vehicle became hung up, resulting in serious injuries to a good Samaritan who tried to free the vehicle:
In our opinion, the injury suffered by Snider did not fall within the scope of protection afforded by the defendant's duty toward him. As stated in Hill v. Lundin and Associates, Inc., 260 La. 542, 256 So.2d 620 (1972), rules of negligence are not designed to protect every victim against every risk that may befall him simply because a violation of a rule may have played some part in producing the injury. Here, accepting that the pipe constituted a hazard to motor vehicles, it cannot reasonably be held to have constituted a hazard, to a non-motorist injured in attempting to extricate a vehicle from the pipe. As noted in Lundin, supra, it is the task of the courts to define the proper reach of a rule of conduct, and to determine by the circumstances of each case which persons are protected by the rule. In the present case, we recognize that a property owner is under a duty not to maintain a post on the edge of his property which is dangerous to traffic. However, it is this court's opinion that the ambit of that duty simply does not encompass the risk that a third party might be injured in trying to free a vehicle which is caught on that post, absent any allegation of fact which would indicate a sudden emergency.
Snider, 480 So.2d at 1054.[4]
The present controversy requires that we ask whether the rules of conduct imposing upon the State the duty to maintain the shoulders extended to the benefit of plaintiff in this case. Gresham v. Davenport, 537 So.2d 1144 (La.1989); Vicknair v. Hibernia Building Corp., 479 So.2d 904 (La.1985). In other words, we must examine whether the trial court in this case erred as a legal proposition in concluding that the State's duty to maintain the shoulder of Highway 8 extended to encompass the risks that one driver would block the travel portion of the roadway and *608 that another one, driving while intoxicated, would ignore warnings of otherwise imminent peril.
Foreseeability is not always a reliable guide, and certainly it is not the only criterion for determining whether there is a duty-risk relationship. Just because a risk may foreseeably arise by reason of conduct, it is not necessarily within the scope of the duty owed because of that conduct. Neither are all risks excluded from the scope of duty simply because they are unforeseeable. The ease of association of the injury with the rule relied upon, however, is always a proper inquiry. Prosser, Law of Torts (3rd ed.1964), 282 ff.
Where the rule of law upon which a plaintiff relies for imposing a duty is based upon a statute, the court attempts to interpret legislative intent as to the risk contemplated by the legal duty, which is often a resort to the court's own judgment of the scope of protection intended by the Legislature. Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298; Pierre v. Allstate Ins. Co., [257 La. 471, 242 So.2d 821 (1970)] supra. Where the rule of law is jurisprudential and the court is without the aid of legislative intent, the process of determining the risk encompassed within the rule of law is nevertheless similar. Malone, Ruminations on Dixie Drive It Yourself, 30 La. L.Rev. 363 (1970); McDonald, Proximate Cause in Louisiana, 16 La.L.Rev. 391 (1956). The same policy considerations which would motivate a legislative body to impose duties to protect from certain risks are applied by the court in making its determination. `All rules of conduct, irrespective of whether they are the product of a legislature or are a part of the fabric of the court-made law of negligence, exist for purposes. The are designed to protect Some persons under Some circumstances against Some risks. Seldom does a rule protect every victim against every risk that may befall him, merely because it is shown that the violation of the rule played a part in producing the injury. The task of defining the proper reach or thrust of a rule in its policy aspects is one that must be undertaken by the court in each case as it arises. How appropriate is the rule to the facts of this controversy? This is a question that the court cannot escape.' Malone, Ruminations on Cause-In-Fact, 9 Stanford L.Rev. 60, 73 (1956).
Hill, 256 So.2d at 622-23 (notes omitted).
After studying the law and the facts, we conclude that the trial court erred in assessing the State with liability in this case.
The State's liability for the defective condition of its shoulders clearly extends to drivers and other occupants of vehicles that might leave the travel portion of the roadway in emergency situations:
The Department's duty to maintain highway shoulders is imposed to protect a motorist from the risk of injury produced by a combination of the motorist's inadvertent encounter with an unexpected, sharp dropoff from the roadway and her consequent instinctive oversteering of her vehicle.
Robinson v. State Through Dept. of Transp. and Development, 454 So.2d 257, 261 (La. App. 1 Cir.1984), quoting LeBlanc v. State, 419 So.2d 853, 854 (La.1982)[5]
However, the law does not impose upon the State a duty so broad as to encompass risks attributable to the voluntary actions of third parties, no matter how well intended. For this reason, the good Samaritan cases discussed elsewhere declined to impose liability on landowners and public entities. For the same reason, we decline to impose liability now.
Because this case involves not only the voluntary actions of a good Samaritan but of third party motorists who neither inadvertently strayed onto the shoulder nor instinctively overreacted to some sort of "sudden emergency" situation for which the State might be held accountable, we are compelled to reverse the trial court's assessment of liability against the State in this case, at plaintiff-appellee's costs.

*609 DECREE

Accordingly, the judgment of the trial court against the State is reversed, at appellee's, Joseph E. Tassin's, costs.
REVERSED AND RENDERED.
NOTES
[1] According to the State, Mr. Tassin's blood alcohol level was either .14% or .11%, depending on whether one accepts Rapides General Hospital's or the state crime lab's assessment. Plaintiff does not dispute these results.
[2] Tassin's vehicle also struck Mr. Parker, resulting in serious injuries, including a partial amputation of Parker's left leg. This claim was settled soon before the May 30-31 and June 2, 1995, trial.
[3] Plaintiff Tassin had already settled his claims against the other defendants.
[4] Also, somewhat helpful is the case of Allemand v. Zip's Trucking Co., Inc. 552 So.2d 1023 (La. App. 1 Cir.1989), writ denied, 558 So.2d 569 (La. 1990). In Allemand, an accident occurred when an 18-wheeler truck owned by Zip Trucking Company blocked both lanes of a two-lane highway, due in part to the lack of assistance offered by and the location of the plant entrance owned by Caro Produce & Institutional Foods, Inc. In reversing the trial court's judgment finding no liability on the part of Caro, for which it assessed 30%, the appellate court had this to say:

A threshold issue to be considered in the determination of liability of a party is whether the conduct of that party is a cause-in-fact of harm to another; stated another way, whether the conduct was a substantial factor in bringing about the harm. Dixie Drive It Yourself System New Orleans Co. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962). If the collision would have occurred irrespective of the assistance of Caro employees, then the omission was not a substantial factor or cause-in-fact. See Dixie, 137 So.2d at 302. Clearly, if Caro had exercised supervision over the docking procedure employed by Mr. Proctor, either the unnecessary blockage of the entire roadway could have been prevented or the positioning of flagmen adequate to warn oncoming traffic could have been accomplished, thereby preventing the resultant injuries and death. We find that the failure of Caro to provide adequate docking instruction and supervision was a substantial factor in bringing about this accident.
Allemand, 552 So.2d at 1030. The court of appeal also affirmed the trial court's finding the motorist free from fault, finding that she had only had about 100 feet of notice as she rounded a highway curve when 261 to 425 would have been required to react timely.
Unlike Joseph and Snider, both of which concerned legal causation, the issue in Allemand was factual causation.
[5] Such emergency situations might even arise through the simple inadvertence of a traveler who strays from the highway onto the shoulder. Rue, 372 So.2d 1197.