711 So.2d 420 (1998)
Todd CARUTHERS, Plaintiff-Appellee,
v.
STATE of Louisiana, Through The DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, Defendant-Appellant.
No. 97-1450.
Court of Appeal of Louisiana, Third Circuit.
April 15, 1998.
*421 Marshall J. Stockstill, Lafayette, Richard Monroe Garner, Baton Rouge, for Todd Caruthers.
Timothy Alan Maragos, Lafayette, for State, Through its Department, etc.
Michael J. Remondet, Jr., Lafayette, for Insurance Company of North America.
Before THIBODEAUX, COOKS and AMY, JJ.
THIBODEAUX, Judge.
The State of Louisiana through its Department of Transportation and Development (hereinafter "DOTD") appeals a judgment granted in favor of Todd Caruthers. As the result of a single-vehicle accident, Mr. Caruthers sustained permanent damage to his spinal cord and was rendered paraplegic. Caruthers contends that an oncoming, "phantom vehicle" caused him to veer off La. Highway 343, but that defects in the roadway's shoulder and slope caused him to lose control of his employer's vehicle.
Caruthers filed a suit for damages against DOTD, asserting that DOTD's negligence in failing to properly maintain and inspect La. Highway 343 significantly contributed to his accident and resulting injuries. Following a bench trial, the trial court apportioned 85% fault to DOTD, 10% fault to the "phantom vehicle," and 5% fault to Mr. Caruthers. The trial court awarded Caruthers $3,373,761.86 in general and special damages.
We affirm.

I.

ISSUES
We shall consider:
1) whether the trial court was manifestly erroneous in finding the plaintiff's experts credible despite the fact their opinions as to the cause of the accident were allegedly contradictory;
2) whether the trial court was manifestly erroneous in finding that the plaintiff satisfied the burden of proving the existence of a defect in the shoulder of La. Highway 343; and,
3) whether the trial court was manifestly erroneous in finding that the plaintiff satisfied the burden of proving the existence *422 of a defect in the slope on the shoulder of La. Highway 343.

II.

FACTS
On August 18, 1991, Todd Caruthers was driving his employer's pickup truck, traveling north on La. Highway 343 in Lafayette Parish. Caruthers approached an oncoming vehicle traveling south on La. Highway 343. The vehicle began veering into the northbound lane. Caruthers sounded his vehicle's horn, but the "phantom vehicle" continued to veer into Caruthers' lane of travel.
To avoid a possible collision, Caruthers maneuvered his vehicle to the right edge of the roadway. Subsequently, Caruthers' vehicle exited the roadway surface onto the shoulder. Attempting to steer the vehicle back onto the roadway surface, Caruthers lost control of the vehicle. The vehicle traveled along the road's slope and, ultimately, struck a ditch, flipping several times before coming to its final, resting point. Caruthers was ejected from the vehicle. He sustained damage to his spinal cord, resulting in complete paraplegia.
On August 14, 1992, Mr. Caruthers filed suit against the Parish of Lafayette and DOTD, asserting negligence and/or strict liability on the part of DOTD in failing to properly design, construct, inspect, and/or maintain La. Highway 343, including its shoulder. Caruthers asserted that defects in the drop-off between the paved portion of the roadway and the unpaved portion of the shoulder created an unreasonable risk of harm to motorists. His damages resulted from encountering this unreasonable risk of harm.
On February 19, 1997, a bench trial was held to adjudicate this matter. At the conclusion of the trial, the trial judge rendered its verdict, assigning 85% fault to DOTD, 10% fault to the "phantom vehicle," and 5% fault to the plaintiff, Caruthers. The trial judge awarded Caruthers general and special damages totaling $3,373,761.86. From this judgment, DOTD appeals.

III.

LAW & DISCUSSION

Alleged Contradictory Opinions of Plaintiff's Experts
DOTD contends that the trial court erred in finding the plaintiff's experts credible, despite their alleged contradictory opinions as to the cause of the accident. Specifically, DOTD argues that the trial court erred by failing to make a credibility determination and a finding of fact in support of only one of the theories. Since the theories of each expert are allegedly diametrically opposed to the other and contrary to the physical evidence, the trial court would have erred even if it had deemed only one of the experts, and his respective theory, as credible. We disagree with the defendant's arguments.
An appellate court may not set aside a trial court's findings of fact, absent manifest error or unless such findings are clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). "[W]here there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable." Id. at 844; Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978).
Moreover, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." Id. Further, if such findings are based on credibility determinations regarding witnesses, great deference must be accorded to the trial court's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Rosell, 549 So.2d 840.
In this suit, the plaintiff presented expert testimony from Duaine Evans and Stephen Killingsworth to establish the existence of defects in La. Highway 343 and to prove causation regarding the plaintiff's accident and resulting damages. Both individuals are experts in traffic/mechanical engineering and accident reconstruction.
*423 At trial, Mr. Evans testified about the "slope" of the roadway's shoulder. Evans stated that the plaintiff exited the roadway, with two wheels initially on the low shoulder, causing the plaintiff's vehicle to tilt and gravitate onto the slope and toward the ditch. Evans opined that, as the vehicle progress further down the slope, the plaintiff attempted to return to the roadway, but to no avail. Ultimately, Evans noted, the vehicle struck the embankment of the ditch and began to roll. At some point, the plaintiff was ejected from the vehicle. Evans concludes that the low shoulder and steep slope contributed to the plaintiff's accident and resulting injuries.
Mr. Killingsworth, on the other hand, testified concerning the "drop-off," the difference in elevation between the unpaved portion of the shoulder and the paved portion of the roadway. Based on his review of the evidence, Killingsworth testified that the plaintiff's vehicle exited the paved portion of the roadway onto the aggregate (i.e., unpaved) portion of the shoulder. As the plaintiff attempted to reenter the paved portion of the roadway, the plaintiff's vehicle was repelled away from the roadway. Simultaneously, the plaintiff lost control of the vehicle, which thereby traveled along the slope striking the ditch. Killingsworth asserts that the height differential between the paved portion of the roadway and the aggregate portion of the shoulder was a significant factor which contributed to the plaintiff's accident and resulting injuries.
After reviewing the record, we find that the trial court was not manifestly erroneous in placing greater evidentiary weight on the testimony provided by Mr. Evans and Mr. Killingsworth. The testimony of both experts was offered to prove defects in the Highway 343 and its shoulder. Both experts presented plausible causation theories as to the plaintiff's accident and subsequent damages.
The trial court has great discretion in making witness credibility determinations. Moreover, only "[w]here documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story," may an appellate court find manifest error in a finding purportedly based upon a credibility determination. Id. at 845-45.
However, "where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong." Id. No such inconsistencies nor contradictions were found in the record. Therefore, we conclude that the trial court's credibility determinations and factual findings were reasonable, supported by the record, and not manifestly erroneous.

Shoulder Defect
In determining whether the shoulder or slope of a roadway was negligently maintained, this court has held that "[c]ausation is a question of fact as to which the trial court's determinations are entitled great weight and should not be disturbed absent manifest error." Brown v. Department of Transportation, 604 So.2d 99, 102 (La.App. 3 Cir.1992), citing Grappe v. State, Department of Transportation & Dev., 462 So.2d 1337, 1340 (La. App. 3 Cir.1985).
Under Louisiana jurisprudence and statutory law, DOTD is required to maintain highways in a reasonably safe condition for motorists. Although DOTD is not an insurer of the safety of a motorist using state highways, it cannot knowingly allow a hazardous condition to exist. Included within DOTD's duties is the maintenance of highway shoulders. Brown, 604 So.2d at 102 (citations omitted); see also La.R.S. 48:21. DOTD's "duty to maintain highway shoulders is imposed to protect a motorist from the risk of injury produced by a combination of the motorist's inadvertent encounter with an unexpected, sharp drop-off from the roadway[,] and [his] consequent instinctive oversteering of [his] vehicle." Tassin v. State Farm Ins. Co., 96-754, p. 4 (La.App. 3 Cir.1997); 692 So.2d 604, 606, citing LeBlanc v. State, 419 So.2d 853, 854 (La.1982).
"Liability based on negligence is imposed when DOTD is actually or constructively aware of a hazardous condition and *424 fails to take corrective action within a reasonable time." Tassin, 692 So.2d at 606. The rationale for extending liability to drop-off victims is based on "an implicit necessity for the functional use of a shoulder [and] a connection between the roadway and shoulder that allows for safe gradual movement from one to the other." Id., citing Sinitiere v. Lavergne, 391 So.2d 821, 825 (La.1980).
In this suit, the plaintiff argues that there was a 2½ to 3-inch drop-off in the shoulder of Highway 343 which created a hazardous condition, causing his accident and resulting injuries. As a result, the plaintiff urges, DOTD should be held liable for failing to repair the defective roadway.
Conversely, DOTD contends that the plaintiff failed to sustain the burden of proving the existence of a defect in the drop-off on Highway 343. DOTD argues that the testimony of both of the plaintiff's experts is flawed because their opinions are based on irrelevant and unreliable measurements taken by the plaintiff's surveyor nearly eleven months after the accident. DOTD contends that the only reliable testimony regarding the depth of the drop-off on the day of the accident was the testimony of the investigating officer, State Trooper Ricky Thibodeaux.
Based on Trooper Thibodeaux's estimates, the depth of the drop-off was approximately 1 to 1¼ inches below the edge of the paved roadway, as opposed to the "unreasonably dangerous" 2½ to 3-inch drop-off set forth by the plaintiff's experts and witnesses. Therefore, DOTD argues, the testimony of the plaintiff's experts is not credible nor relevant, and the plaintiff has thereby failed to prove the existence of a defect in the roadway's drop-off. We disagree.
Generally, a roadway is considered defective and unreasonably dangerous when the depth of its drop-off exceeds two inches. Brown, 604 So.2d 99; Bethea v. La. Dept. of Transportation and Development, 415 So.2d 535 (La.App. 1st Cir.1982); Cradeur v. State, Through Dep't. of Transp. & Dev., 607 So.2d 1050 (La.App. 3 Cir.1992). At trial, Trooper Thibodeaux testified that the drop-off could have ranged from 1 to 1¼ inches in depth, but stated that the drop-off depth could have been greater. Trooper Thibodeaux's independent recollection of his drop-off measurement was vague and uncertain. While he believed he had executed the measurement, Trooper Thibodeaux could not recall the exact depth of the drop-off. The accident report prepared by Thibodeaux was void of any measurements concerning drop-off depth.
In his deposition, Carl Collins, a co-worker and supervisor of the plaintiff, testified that he arrived at the crash site shortly after the accident occurred. He assisted the state troopers in taking measurements of the roadway and took seven photographs of the accident scene; the photographs were admitted into evidence. As a consequence of his particular job duties, Mr. Collins possessed experience in executing and estimating measurements. Based on his recollection of the accident scene, Collins testified that the depth of the drop-off ranged from 2½ to 3 inches.
Additionally, Edmond Dupre testified that he measured a 2½ to 3-inch drop-off at the point where the plaintiff likely attempted reentry onto Highway 343. Mr. Dupre was the plaintiff's surveyor and an expert in roadway geometrics. His calculations were based on measurements which he took in August 1992, eleven months after the accident.
The factual issues in this suit are analogous to those in the case of Brown v. Department of Transportation, 604 So.2d 99. In Brown, the plaintiffs brought suit against DOTD for damages arising out of an accident in which the driver loss control of his vehicle while attempting to reenter a highway from the shoulder. On the day of the accident, a state trooper estimated the depth drop-off as 1 to 1½ inches, but he made no measurements. Days later, a DOTD official measured the shoulder drop-off in several places, but not at the point where the plaintiff driver attempted reentry onto the shoulder. The official's measurements revealed a 1 to 1½-inch drop-off, as well.
However, three months after the accident, the plaintiff's surveyor measured the appropriate drop-off as 2 inches or greater. He was the only individual to measure the drop-off in the area where the plaintiff's vehicle attempted to reenter the highway. This *425 court held that the drop-off at the point of the plaintiff's attempted reentry was more probably than not 2½ to 3 inches, and that this condition was substandard and defective. DOTD was deemed negligent for allowing this condition to exist and for failing to make the necessary repairs.
Similarly, in Richards v. Everett, 513 So.2d 350 (La.App. 4 Cir.), writ denied, 514 So.2d 1182 (La.1987), the Fourth Circuit held that a survey prepared more than four years after the date of the accident was admissible. The court stated that any discrepancies would be considered in regard to the weight placed on the evidence rather than to its admissibility. Id. The trier of fact had the discretion to determine the weight to be placed on the evidence, in light of opposing testimony. Id.
We find that the trial court's determinations regarding the depth of the drop-off are supported by the evidence. The trier of fact has great discretion in its weighing of the evidence presented at trial. The record shows that the trial court placed great weight on the uncontroverted evidence and testimony presented by the plaintiff's experts. DOTD presented no experts to refute the height differential in the roadway's drop-off.
Trooper Thibodeaux's testimony was ambiguous and lacked evidentiary support. The plaintiff's experts and witnesses, however, had corroborative evidence in the form of Mr. Dupre's measurements. The fact that the measurements were taken nearly one year after the date of the accident is inconsequential. Mr. Dupre was the only person who measured the drop-off at the point where the plaintiff's vehicle attempted to reenter onto the paved portion of the roadway. Therefore, we find Mr. Dupre's measurements, as well as the expert testimony based thereon, to be credible and reliable.
The record shows that the factual findings of the trial court were reasonable and void of manifest error. We conclude that the trial court was correct in finding that the plaintiff sustained the burden of proving the existence of a defect in the drop-off on Highway 343.

Defect in Slope of Shoulder
DOTD also contends that the plaintiff failed to establish the existence of a defect in the shoulder and slope on Highway 343. DOTD argues that, at the time of the accident, the shoulder and slope were well within the mandated standards applicable to the normal width of a roadway shoulder. Therefore, DOTD contends, no defects existed in the slope or the shoulder at the time of the plaintiff's accident. We disagree with DOTD's argument.
This court has held:
A motorist has a right to assume that a highway shoulder, the function of which is to accommodate motor vehicles intentionally or unintentionally driven thereon, is maintained in a reasonably safe condition. Conversely[,] the Highway Department's duty to maintain a safe shoulder encompasses the foreseeable risk that for any number of reasons, including simple inadvertence, a motorist might find himself traveling on, or partially on, the shoulder.
Tassin, 692 So.2d at 606, citing Rue v. State, Dept. of Highways, 372 So.2d 1197, 1199 (La.1979).
At trial, Duaine Evans testified that the standard for a usable shoulder is four feet. "Usable shoulder" refers to the area where a vehicle, in an emergency situation, either inadvertently or intentionally exits onto the shoulder from the travel lane to either stop or recover and reenter the travel lane. Mr. Evans opined that, in the area where the plaintiff's vehicle exited Highway 343, only 2½ to 3 feet of usable shoulder was available. He further opined that while shoulder would be suitable for a motorist who was gradually exiting the roadway, the usable shoulder in this instance would be insufficient and unsafe for a motorist, such as the plaintiff, who is exiting the roadway in an emergency situation and traveling within the normal highway speed limit.
Additionally, Evans testified that the angle of the slope on Highway 343 ranged from a ratio of 3:1 to 2.4:1, with 2.4:1 being a greater angular position than 3:1. He further testified that any ratio greater than 3:1 would be *426 considered hazardous. Evans noted that a slope with a 3:1 ratio is deemed an unrecoverable slope. Based on the evidence, he opined that the slope at the point where the plaintiff's vehicle exited the roadway was an unrecoverable slope. Thus, Evans concluded that the lack of usable shoulder and the excessive slope on Highway 343 caused the plaintiff's vehicle to gravitate toward the ditch and, ultimately, strike it, causing the plaintiff's injuries.
We find that the trial court was correct in finding that the plaintiff sustained the burden of proving the existence of a defect in the shoulder and slope of Highway 343. The plaintiff's expert established that the roadway lacked sufficient usable shoulder for the plaintiff to make an emergency stop under the circumstances. It was also established that the slope created a steep angle from which the plaintiff's vehicle could not recover and reenter the roadway. As previously noted, DOTD failed to present expert testimony to refute the alleged defects in the shoulder and the slope. The record shows that the findings of the trial court are reasonable and void of manifest error.
Alternatively, DOTD argues that the plaintiff's vehicle was spinning out of control prior to exiting the roadway and before the vehicle encountered the alleged defects. Therefore, DOTD should be absolved of liability because neither of the defects essentially caused the plaintiff's accident. We disagree with DOTD's reasoning.
Under our theory of negligence, the crucial consideration is whether the conduct in question is a cause-in-fact of the resulting harm or injuries. Campbell v. Louisiana Dept. of Trans. & Dev., 94-1052 (La.1/17/95); 648 So.2d 898. It is irrelevant whether the conduct was the primary cause of the accident. Liability may be imposed upon a party, such as DOTD, provided its conduct contributed to causing the injuries sustained by the victim plaintiff. Id. If the party's conduct indeed contributed to the plaintiff's harm, fault will be apportioned to that party according to the extent of the causal relation between the conduct and the damages claimed. Id.
We note several cases in which DOTD has been held negligent when its failure to repair a defective shoulder and/or an excessive slope, combined with the negligence of the motorist, significantly contributes to the motorist's resulting injuries. See Campbell v. Louisiana, DOTD, 648 So.2d 898 (La.1995); Brown v. Louisiana Indem. Co., 97-1344 (La.3/4/98); 707 So.2d 1240; Simpson v. State Through DOTD, 636 So.2d 608 (La. App. 1 Cir.1993), writ denied, 94-0042 (La.5/6/94); 637 So.2d 471; Cradeur v. State, Through DOTD, 607 So.2d 1050.

IV.

CONCLUSION
Based on the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal shall be assessed against the defendant-appellant, DOTD.
AFFIRMED.
AMY, J., concurs.